## THOMAS *v.* THE STATE.

1. Where, upon the trial of a person indicted for a simple assault, there was no evidence of an intention to commit upon the person alleged to have been assaulted any injury other than a battery, it was error for the court to charge the jury in effect that the defendant should be convicted if he attempted to commit a violent injury upon the person of the party assailed, whether the injury intended was a battery or any other violent injury.

2. Where one raised a stick in a striking position and ran toward

another person fifty yards distant, at the same time threatening
to beat that person, and the latter fled, whereupon the pursuer,
after getting within about half the above mentioned distance of
the pursued, abandoned the pursuit, it was, under all the circum-
stances, a question for determination by a jury whether or not
there was an intention to strike, and, if so, whether or not it
could probably have been accomplished if the pursuit had been
continued.    If there was such an intention and an apparent
ability to carry it into effect, the offense of an assault was
committed, though there may not have been an actual ability to
inflict the battery intended.  If there was no intention to strike
at all, or if there was no real or apparent ability to inflict a
battery, there was no assault.

April 13, 1896.

*Certiorari.*   Before   Judge   Hart.   Morgan   superior
court.    March term, 1896.

*George & George,* for plaintiff in error.

*H. G. Lewis, solicitor-general,* by *Anderson, Felder &
Davis,* and *E. W. Butler,* contra.

ATKINSON, Justice.

Thomas was tried in the county court of Morgan county,
upon an indictment charging him with an assault upon Mrs.
Durdin.   He was found guilty, and took the case by *cer-
tiorari* to the superior court, where the *certiorari* was over-
ruled, to which ruling he excepted.    The errors assigned in
the petition for *certiorari* were, that the verdict was con-
trary to law, evidence, etc.    Further, because the court
erred in refusing to charge, as requested by defendant:
"An assault is an attempt to commit a violent injury upon
the person of another.    This is the definition of an assault
as contained in section 4357 of the code.    The violent in-
jury on the person of another, contemplated in this section
of the code, is a battery, or the unlawful beating of another,
so far as it affects this case."   The court gave the definition
of an assault as contained in this request, but refused to
charge the other portion of the request.

Because the court erred in refusing to charge, as re-

quested by defendant: "To constitute an assault there must be an attempt to commit a violent injury upon the person of another, and coupled with such attempt there must be a present ability and intention to commit such injury. In other words, before the defendant can be convicted of an assault in this case, you must be satisfied from the evidence that he, the defendant, attempted to commit a violent injury upon the person of Mrs. Durdin; that is, a battery upon her, and that he, defendant, was at the time in striking distance of Mrs. Durdin." And in charging in lieu thereof: "Now, did this defendant, on the day named, in this county, make an attempt to commit a violent injury upon the person of Mrs. Durdin, to commit a serious personal injury upon her, whether a battery or any other violent injury upon her?"

Further, because the court erred in charging: "If the evidence does not satisfy you that this defendant was the man Mrs. Durdin in her testimony alleges him to be, or that he made an attempt to commit a violent injury upon her person, whether it be a battery or any other violent hurt to her person, you should acquit the defendant." Alleged to be error, because an expression of opinion on the facts as to what Mrs. Durdin had sworn as to the identity of defendant. Further, because it instructed the jury that in a simple assault they might consider whether any other personal injury but a battery was intended by defendant.

Error in charging: "But if, on the other hand, you are satisfied as reasonable, practical men, from the evidence in this case, that this defendant was the man she asserts him to be, and that he did intend to make and did make an assault to commit a personal injury upon this woman, then it would be your duty to return a verdict of guilty in this case." Alleged to be error, because an expression of opinion as to what Mrs. Durdin asserted in regard to the identity of defendant.

Upon the trial the prosecutrix, who was the person as-

sailed, testified that she was standing in a cotton patch near a road and her attention was suddenly attracted by some person addressing her. She recognized that person as the defendant. He was about fifty yards away. He was humming, whistling and stooping, and called her three times, and asked who she was. She remained silent. The fourth time in a more threatening manner he said, "Who are you, madam?" She said, "Who are you?" He said, "My name is Jim Skinner, madam. Confound your soul, if you don't like what I said, I will take this to your head"; using an oath, and raising a stick, and starting towards prosecutrix, after having also said, "Don't give me any of your slack jaw." She was so excited that she could not run at first, but when she got into the road and saw him coming, she began to scream for help. She then ran. He was twenty-five steps away when she last saw him, and coming right towards her. He came out of some pines at first. As she ran she looked back, and when she started he was twenty-five steps and gained on her a little. The last time she saw him, he was running away from her.

1. The court, among other things, was requested to charge the jury that "to constitute an assault there must be an attempt to commit a violent injury upon the person of another, and coupled with such attempt there must be a present ability to commit such injury. In other words, before the defendant can be convicted of an assault in this case, you must find from the evidence that the defendant attempted to commit a violent injury upon the person of Mrs. Durdin, that is, a battery upon her, and that the defendant was at the time in striking distance of Mrs. Durdin." This request the court refused, and instead charged the jury as follows: "Now, did this defendant, on the day named, in this county, make an attempt to commit a violent injury upon the person of Mrs. Durdin, to commit a serious personal injury upon her, whether a battery or any other violent injury upon her." We do not think this charge

was correct. It was not adjusted to the case as presented by the evidence. The whole theory of the State's case rested upon the idea that the alleged attempt to injure the person of the prosecutrix contemplated a battery upon her. There was not the slightest evidence from which a supposition could arise that he intended to commit other than a violent injury in the nature of a battery upon her; and hence, the effect of this charge was to enable the jury to go outside of the evidence, and convict the accused upon a supposititious theory wholly unsupported by the evidence. It was prejudicial to him, and necessarily harmful, the evidence presenting a close question as to whether he was guilty of a criminal assault or not.

2. The other instructions of which complaint is made undertake to define the demonstrations of violence which are sufficient to constitute an attempt to commit a violent personal injury upon another. We think the court's conception of the law as expressed in the charge complained of was substantially accurate. The authorities differ as to what acts constitute this offense. In some of the courts it is held that there must be a present intention accompanied with an actual ability immediately to inflict the battery, but which is only prevented by some supervening obstacle. Thus, in Alabama it was held that aiming an unloaded gun at another, though supposed to be loaded, and though it is aimed within shooting distance, and in such a menacing manner as to terrify, is not such an assault as can be criminally punished, though it may sustain a civil action for damages. On the other hand, says Clark in his Criminal Law, page 207: "Other courts and modern text-books of the highest authority hold that an actual present ability to inflict the injury is not necessary; that it is sufficient if there is a reasonably apparent present ability, so as to create an apprehension that the injury may be inflicted, and cause the person threatened to resort to measures of self-defense, or to retreat or go out of his way

to avoid it, though the assailant may not get within striking distance, and may not be actually able to injure. The weight of modern authority is in favor of this doctrine." The author cites a great number of cases to this effect.

In 27th Cal. 630, the case of the People *v.* Yslas, the Supreme Court of that State, in a discussion of this question, lays down the rule as follows: "In order to constitute an assault there must be something more than a mere menace. There must be violence begun to be executed. But where there is a clear intent to commit violence, accompanied by acts which if not interrupted will be followed by personal injury, the violence is commenced and the assault is complete. Thus riding after the prosecutor so as to compel him to run into a garden for shelter to avoid being beaten, was held to be an assault." Citing the English case of Martin *v.* Shoppee, 3 Car. & Payne, 374. "So where the defendant was advancing in a threatening attitude, with intent to strike the plaintiff, so that his blow would in a second or two have reached the plaintiff, if he had not been stopped, although when stopped he was not near enough to strike, it was held that an assault had been committed." Citing Stephen *v.* Myers, 4 Car. & Payne, 349. "It is not indispensable to the commission of an assault that the assailant should be at any time within striking distance. If he is advancing with intent to strike his adversary and comes sufficiently near to induce a man of ordinary firmness to believe, in view of all the circumstances, that he will instantly receive a blow unless he strike in self-defense or retreat, the assault is complete."

So in North Carolina in the case of the State *v.* Rawles and others, 65 N. C. 334, it was held that "If a person be at a place where he has a right to be, and four other persons having in their possession a manure fork, a hoe and a gun, by following him and by threatening and insulting language, put him in fear, and induce him to go home sooner than, or by a different way from, what he would otherwise

have gone, are guilty of an assault upon him, though they
do not get nearer to him than seventy-five yards, and do
not level the gun at him." So in 81 N. C. 513, in the
case of the State *v.* Shipman, it appears that "Defendant,
after using threatening language with reference to the pros-
ecutor and in his hearing, advanced upon him with a knife,
continuing the use of violent and menacing expressions;
the evidence left it doubtful as to whether or not the knife
was open; when defendant got within five or six feet of
the prosecutor, the latter said, 'I shall have to go away,'
and withdrew from the work on which he was engaged:
Held, that defendant was properly convicted of an assault."

Upon the proposition announced above, citations might
be multiplied almost indefinitely, and we approve the rule,
that there need not be an actual present ability to commit
a violent injury upon the person assailed, but if there be
such a demonstration of violence, coupled with an apparent
ability to inflict the injury, so as to cause the person against
whom it is directed reasonably to fear the injury unless
he retreat to secure his safety, and under such circum-
stances he is compelled to retreat to avoid an impending
danger, the assault is complete, though the assailant may
never have been within actual striking distance of the per-
son assailed.                              *Judgment reversed.*