THOMAS R. IVORY, ALIAS RADIO IVORY, V. THE STATE.

No. 17425. Delivered March 20, 1935.
Rehearing Denied May 1, 1935.

The opinion states the case.

*Mike Daughtry,* of Beaumont, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confiement in the penitentiary for ninety-nine years.

Thomas R. Ivory, also described in the indictment as Radio Ivory, is charged with the murder of Gertrude Goode. That appellant shot and killed the deceased is proved without controversy. According to the State's testimony, appellant came to the home of Gussie Norman, armed with a pistol. He told the deceased, who was present, that he was going to kill her, and shot her several times, causing her death.

Appellant testified that he had been staying with deceased from time to time at the place where she resided. It appears from the testimony that deceased was an inmate of a house of ill fame. Appellant claims that they had had trouble on several occasions; that on one occasion she stabbed him in the arm, making a wound which required several stitches; that at another time she struck him with an ice-pick and caused him to stay in bed for several days. From the appellant's testimony we quote: "I recall seeing her on Sunday night previous to this Friday morning when I killed her. I had been up town to a barber shop. On my way back home she came off the porch and tried to stab me."

Appellant told deceased the next day that he would not see her any more. It was the contention of the appellant that he was in terror of his life due to the persistent efforts of the deceased to do him harm. According to his testimony, as he approached the place where the deceased was killed, he was observed by her and other girls who were present. Having heard that she was going to kill him, appellant got out on the street so that the other girls would be between him and the deceased. She threw up her hand and thinking that she was going to stab him with an ice-pick or knife, appellant fired. From the appellant's testimony we quote: "I fired the gun, running backwards. I don't know how many times I fired the pistol. I don't know how many times I shot her. I don't know where I

hit her. In reference to shooting myself, I don't know, I just decided to shoot and end it all. I shot myself and it didn't kill me. * * * In reference to my cohabitation with this girl * * * I only visited her occasionally. However, I was doing for her. I had been spending all I made on her."

Further recital of the evidence is deemed unnecessary. Suffice it to say that it is sufficient to support the verdict of the jury.

There are three bills of exception in the record.

From Bill No. 1, it appears that the appellant's witness, Felix Huey, having testified that the appellant's reputation as a law-abiding negro was good, was asked upon cross-examination several questions of which complaint is made in the bill. Summarized, the questions were whether appellant had had trouble at a laundry, that is, an altercation of some kind. Appellant's counsel objected to the question, and the District Attorney said: "It is violence and disturbing the peace." The court excluded the remark as inadmissible. State's counsel asked the following question: "You know about that actual occasion, don't you, Mr. Huey?" Objection to the question was urged, and the answer was "Yes, sir." The court certifies that he sanctioned the use of the questions and answers as set out in the bill. The appellant put his reputation in issue in applying for a suspended sentence, which issue was submitted to the jury. As the record is understood, no prejudicial error is perceived in the bill.

Bill No. 2 complains of the cross-examination of the appellant's witness, Felix Huey, who gave testimony favorable to the appellant's general reputation for peace and quietude. The witness was asked the following question: "Did you know that in 1930 he (defendant) was arrested for wandering around the streets at late hours at night—did you hear that?"

The objection to the question was overruled, and the answer was "No." Viewed in the light of the record, the procedure set forth in the bill does not justify a reversal of the judgment.

Bill No. 3 relates to the testimony of the same witness as above, Felix Huey. After giving testimony favorable to the general reputation of the appellant as a peaceful and law-abiding negro, stating that his reputation was good, the witness was asked the following question by State's counsel: "Did you know that in this January, or did you hear that during this January he was filed on in the city court for vagrancy for commonly associating with prostitutes?"

The complaint is made of the question because is was an

attempt on the part of the State to prove specific violations of the criminal statutes. The witness answered "No" to the question. It is thought that the bill shows no error. Certainly none justifying a reversal. The witness Huey having been called upon by appellant to give testimony touching the reputation of the appellant, the State was within its rights to make inquiry bearing upon the knowledge of the witness touching the reputation of the appellant. The question asked, it is thought, was within the scope of the authorities sanctioning the cross-examination of character witnesses. See Adaire v. State, 45 S. W. (2d) 984; Brady v. State, 44 S. W. (2d) 373; Whitlock v. State, 58 S. W. (2d) 109, and authorities collated.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant presents a strong motion for rehearing, urging that we erred in our disposition of his bills of exception No. 1. To get the setting accurately, Mr. Huey, manager of a laundry where appellant worked, was called as a witness for appellant, and testified that he knew the general reputation of appellant for being a peaceable and law-abiding negro, and that it was good. On cross-examination by the State this witness was asked "Now he has had a little trouble around the laundry there once, didn't he, Mr. Huey?" To this question the witness answered without objection "Yes, sir." The bill sets out that Mr. Huey was then asked by the State "That was an altercation of some kind, wasn't it?" The court sustained the objection of the defense made on the ground that it was an attempt to prove a specific offense against appellant. The State then asked "You know about that actual occasion, don't you Mr. Huey?" and over the renewed objection that this was proving a specific offense, witness was allowed to answer "Yes, sir."

Specially relying upon Adaire v. State, 45 S. W. (2d) 984, and Goss v. State, 284 S. W., 580, also a number of other authorities both in Texas and out, and quotations from text writers, appellant insists that the matter just set out should have been held reversible error. We are unable to agree with the soundness of the contention. In the Adaire case, supra, the State's attorney persisted in asking pointed questions referring to particular acts of misconduct, the injurious character of which could be gathered from the form of the question, each relating to some specific accusation or wrongdoing of the accused. The objection to all of these questions was sustained.

When appellant took the stand in his own behalf he was asked questions regarding each of these specific acts by the State, and his objection to these questions was also sustained.

Without going into any extended analysis or discussion of the various authorities cited by appellant in his motion, we state our substantial agreement with them. We think the case at bar differentiates itself both on the facts and principle involved from the authorities cited. In this case it appears that without objection at all on the part of appellant, the witness affirmed as a fact that appellant had had some trouble down at the laundry. The question by the State, which followed this affirmation of the witness, was merely an inquiry as to whether or not this was an altercation. An altercation, according to Webster's International Dictionary, is "Warm contentions in words; dispute carried on with heat or anger; controversy; wrangle; wordy contest." Just how appellant could claim that this was a violation of any law, or in any way a specific offense, does not appear nor do we believe such contention to be sound. The remaining part of said bill of exceptions merely shows that when Mr. Huey was asked if he knew about this occasion, he affirmed that he did. The whole matter so plainly differs from anything in the Adaire case, supra, or the Goss case, supra, or any of the other decisions cited, as that further comparison or analysis seems unnecessary.

The motion for rehearing is overruled.

*Overruled.*