38360. QUAKER CITY LIFE INSURANCE COMPANY
v. SUTSON.

DECIDED JULY 5, 1960.

54

*Smith, Field, Ringel, Martin & Carr, Palmer H. Ansley, H. A. Stephens, Jr.*, for plaintiff in error.

*Philip T. Keen*, contra.

BELL, Judge. *The record shows conclusively that the deceased was acting in a belligerent manner and advancing in a menacing and threatening way upon a third party, uttering threats and curses, carrying a knife in her hand, which caused the third party to retreat and finally to shoot fatally the insured.*

█ The bill of exceptions assigns as one error the trial court's overruling of the motion for judgment non obstante veredicto. As we understand the opinion in the case of *Southern Bell Tel. & Tel. Co. v. Brackin*, 215 Ga. 225 (109 S. E. 2d 782), the Supreme Court held in substance that the purpose of the provision for judgments notwithstanding verdicts is to bring an end to litigation where under the pleadings and evidence the verdict for the party moving for such a judgment is demanded as a matter of law. This motion here is based on the exceptions and exclusions of both the $1,000 and the $500 policy. The $1,000 policy provides in part:

"Exceptions and exclusions. The insurance under this policy does not cover and the company shall not be liable for loss resulting directly or indirectly, wholly or partially from: . . . (f) participating in a riot or attempting to commit an assault or felony. . ."

Thus by the terms of the insuring agreement, as evidenced by the contract attached as Exhibit "B" to the plaintiff's petition, the company is not liable for the death of the insured if the death resulted from committing or attempting to commit an assault or felony.

Taking the undisputed evidence as a whole, there appears to be no possible lawfully proper conclusion which could be

reached by the triers of the facts other than that the deceased was, at the time of her death, committing or attempting to commit an assault or felony.

An assault has been variously defined in the law. *Code* § 26-1401, defines an assault as an attempt to commit a violent injury on the person of another. Wharton's definition is "An assault is an *apparent* attempt to inflict a battery or bodily contact or harm upon another." (Emphasis added.) 1 Wharton's Criminal Law & Procedure 674, § 329 (12th ed. 1957). Bishop's definition is "An assault is any unlawful physical force, partly or fully put in motion, creating a *reasonable apprehension* of immediate physical injury to a human being." (Emphasis added). 2 Bishop, Criminal Law 14, § 23.

The decisions of the States are in conflict as to whether there must be an actual intent or merely an apparent intent to commit an assault. 1 Wharton's Criminal Law & Procedure § 330 (12th ed. 1957). See also, *Harrison v. State*, 60 Ga. App. 610 (4 S. E. 2d 602). In *Thomas v. State*, 99 Ga. 38, 44 (26 S. E. 748), Justice Atkinson, speaking for the court, said: ". . . there need not be an actual present ability to commit a violent injury upon the person assailed, but if there be such a demonstration of violence, coupled with an *apparent ability* to inflict the injury, *so as to cause the person against whom it is directed reasonably to fear the injury* unless he retreat to secure his safety, and under such circumstances he is compelled to retreat to avoid an impending danger, the assault is complete . . ." (Emphasis added). In *Rutherford v. State*, 5 Ga. App. 482 (63 S. E. 570), the court held: "While a mere threat or menace to commit a violent injury upon the person of another is not sufficient to constitute an assault, yet where the threat or menace is accompanied by an *apparent attempt* to commit such an injury, and its consummation is prevented, either by the act of the person upon whom the assault is threatened or by the interposition of a third person, the violence has commenced and the assault is complete." (Emphasis added).

It seems to be a preferable correlation, and one completely compatible with the expressions of our own courts to say that where all the apparent circumstances, reasonably viewed, are

such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another, there is an assault. In the light of the facts of the present case, it seems that there were such apparent circumstances reasonably viewed of an attempt to commit violence, there was such apprehension, there was such an unlawful act, and therefore there was an assault.

Applying these principles to the record in this case, it appears that the jury, within the restraint of the law, could only conclude from the evidence that at the time the insured met her death she was committing or attempting to commit an assault or felony within the exclusionary provisions of the policy.

Coming to the $500 policy, which is Exhibit "B" to the petition, the motion of the defendant company for judgment notwithstanding the verdict is based on a different portion of the policy provisions which provides as follows:

"When policy is voidable. Unless this policy is incontestable at the date of death of the insured, this policy shall be voidable by the company either before or after any claim if . . . (d) The death of the insured occurred while the insured was under the influence of narcotics or intoxicants, or while in the performance of, or taking part in any altercation resulting in physical violence or while committing a felony . . ."

The policy goes on to provide that in the event it is voided by the company under this provision, the company shall refund the premiums paid, and the record indicates that such offer was made to the plaintiff which was refused. It will be seen that these policy provisions differ considerably from those in the policy discussed above. In order for the company to be able to avoid its liability under the latter policy, it must be found that the insured was under the influence of narcotics or intoxicants or while, in the performance of, or taking part in any altercation resulting in physical violence, or while committing a felony. Again referring to the undisputed evidence in the record, it is our opinion that there is no evidence which could lead to any conclusion other than that, at the time of her death, the insured was taking a very active part in an altercation which resulted in physical violence, namely, her own demise. The term "altercation," is defined as "warm contention in words, dispute car-

ried on with heat or anger, controversy, wrangle, wordy contest." Webster's New International Dictionary (1955). See also, Ivory v. State, 128 Tex. Cr. 408 (81 S. W. 2d 696). Adopting this definition and taking the language of the insured spoken to the third party, and considering her words, both profane and abusive, there appears to be no possible conclusion other than that there was not only an altercation, but a heated altercation, in which the insured was the most active participant until such time as she sustained two gunshot wounds by one of the other parties to the wrangle. The record clearly reveals an altercation resulting in physical violence within the terms of the policy. It is, therefore, evident that the trial court erred in overruling the motion for judgment notwithstanding the verdict in the case of the second policy.

In view of this decision it is unnecessary to rule on the question as to whether the trial court erred in overruling the amended motion for a new trial.

For the reasons stated above, the judgment of the trial court overruling the motion for a judgment notwithstanding the verdict is hereby reversed.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*