Susan C. PITTMAN, Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,
Defendant.

Civ. A. No. 494–287.

United States District Court,
S.D. Georgia,
Savannah Division.

Sept. 7, 1995.

Dwight T. Feemster, Duffy & Feemster, Savannah, GA, for plaintiff.

H. Sanders Carter, Jr., Carter & Ansley, Atlanta, GA, for defendant.

## ORDER

EDENFIELD, Chief Judge.

Plaintiff Susan C. Pittman brought suit against Defendant Massachusetts Mutual Life Insurance Company ("Mass Mutual") based on two insurance policies which provided accidental death coverage for Robert Pittman, Susan's now deceased husband. Mass Mutual has denied that accidental death benefits are due Plaintiff because (1) Robert's death was not accidental as required by the policy and (2) Robert was committing a felony at the time of his death, which precludes coverage under a policy exclusion. Plaintiff disputes Defendant's contentions.

## I. Background

Susan and Robert Pittman were married for five years. The evidence shows that, over the course of their relationship, Robert continuously and severely abused his wife and children, sometimes using objects to hit them. S. Pittman Dep. at 44–47. Susan never tried to defend herself during these attacks. *Id.* at 48. At one time during their marriage, during an argument over a bill, Robert drew a gun and threatened Susan. Susan responded: "What are we going to do? Have a gun battle over a bill?" *Id.* at 48–49. Robert then took away the gun Susan carried for protection purposes. *Id.* at 50.

Robert's physical abuse required Susan and the children to obtain medical treatment on several occasions. *Id.* at 53–54. Also, reports of his abuse were filed with the police and the Georgia Department of Family and Children's Services. *Id.* at 55–56, 59–60.

One such beating occurred on December 16, 1992, when Robert began hitting and slapping Susan as she descended the stairs in their home. *Id.* at 77. Robert beat her with his fists and a Motorola radio. *Id.* at 78. Susan went into the laundry room. There she noticed a gun laying on top of the dryer.

*Id.* Robert forced her out of the laundry room and pushed her onto the back deck. *Id.* At some point he picked up a piece of fire wood and hit her with it several times. *Id.* at 80. Susan pushed Robert and knocked him off balance, which gave her time to go into the laundry room and pick up the gun she had seen moments before. *Id.* at 78–79. She told Robert to stop beating her, and when he came at her again, she shot him. *Id.* The bullet entered the back of Robert's head, Ray Dep. at 11, and he died from the wound.

Susan was charged with murder, but claimed she shot Robert in self defense. Susan pled guilty to involuntary manslaughter and was sentenced to five years probation. S. Pittman Dep. at 87. She also informed Mass Mutual that she would file a claim under Robert's policies.

In response, Mass Mutual filed an interpleader action and paid into court the face amount of the policies. Susan responded to cross claims by others in that action by claiming she acted in self defense. Specifically, she claimed that she was in fear of significant bodily injury or death at the time she shot Robert. *Id.* at 88 et seq. That case was eventually settled, and Susan filed this action to recover under the accidental death coverage of both policies. *Id.*

Both policies contain a clause limiting accidental death coverage to death occurring "as a direct result of accidental bodily injury independently of all other causes." Policies at ADB 1. The policies contain an exclusion denying accidental death benefits if the insured's death results from an "injury received while committing a felony." Policies at ADB 2.

## II. Summary Judgment Standard

To prevail on its summary judgment motion, the Defendant must demonstrate to the Court's satisfaction no genuine issues of material fact exist and that the Court can render judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112 (11th Cir.1993) (exhaustively discussing the

framework for analyzing summary judgment motions).

▮▮▮ In assessing whether the movant should prevail on a summary judgment motion, the district court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992). The Court must avoid weighing conflicting evidence or making credibility determinations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Finally, because this is a diversity case, Georgia law governs the substantive claims in this dispute. *See Rhone v. State Auto Mut. Ins. Co.,* 858 F.2d 1507 (11th Cir.1988).

## III. Analysis

Defendant seeks summary judgment because (1) Robert's death was not "accidental" as required by both policies for recovery of accidental death benefits and (2) Robert was committing the felony of aggravated assault at the time he was killed which precludes recovery under a policy exclusion. In support of the second ground, Mass Mutual contends that statements Susan made in pleadings filed pursuant to the prior interpleader action estop her from denying that Robert was committing a felony at the time of his death. Plaintiff contends Robert's death was accidental and denies that Robert was committing a felony at the time of his death. Instead, she claims that he was committing a misdemeanor.

▮▮▮ Mass Mutual argues that the doctrine of judicial estoppel precludes Susan from asserting a position or introducing evidence that contradicts the position she took in prior litigation—that she acted in self defense. The doctrine of judicial estoppel

> protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one *successfully* and unequivocally asserted by the same party in a prior proceeding.

*City of Alma v. United States,* 744 F.Supp. 1546, 1555 (1990) (quoting *Reynolds v. C.I.R.,* 861 F.2d 469, 472 (6th Cir.1988)); *Dunn v.*

*Dunn,* 221 Ga. 368, 371, 144 S.E.2d 758 (1965). "When an ordinary civil case is settled, there is no 'judicial acceptance' of anyone's position and thus there can be no judicial estoppel in a later proceeding." *Reynolds v. C.I.R.,* 861 F.2d 469, 473 (6th Cir. 1988). Since the prior interpleader action in which Susan was a party was settled, there can be no judicial estoppel from that action. Therefore, Susan Pittman can introduce competent evidence which might contradict the position she took in the prior interpleader action.

### A. Whether Robert's Death was Accidental

■ Georgia courts interpret accidental death clauses of insurance policies as requiring a showing that death occurred by "accidental means": the death was the unexpected result of an unforeseen or unexpected act which was involuntarily or unintentionally done. *Winters v. Reliance Standard Life Ins. Co.,* 209 Ga.App. 369, 369–70, 433 S.E.2d 363 (1993), *cert. denied,* 209 Ga.App. 916 (1993). Normally, "accidental means" does not include death which was the result of misconduct or provocation on the part of the decedent. *Continental Assurance Co, v. Rothell,* 227 Ga. 258, 181 S.E.2d 283 (1971). However, "[e]ven where the insured is the aggressor, if he could not reasonably anticipate bodily injury resulting in death to himself at the hands of another, the beneficiary may recover." *Riggins v. Equitable Life Assurance Soc'y,* 64 Ga.App. 834, 836, 14 S.E.2d 182 (1941). It is generally within the province of the jury as to whether death was an accident. *Life Ins. of Georgia v. Thomas,* 133 Ga.App. 134, 210 S.E.2d 250 (1974); *cf. James v. Aetna Life Ins. Co.,* 161 Ga.App. 64, 289 S.E.2d 290 (1982) (holding it is a jury question as to whether an injury was accidental).

While Susan clearly intended to shoot Robert, it is not her state of mind that controls whether Robert's death was accidental. Rather, it is Robert's state of mind—whether he reasonably expected to be shot during his final attack on Susan. If so, then his death was "accidental." *Continental Assur. Co. v. Rothell,* 227 Ga. 258, 181 S.E.2d 283 (1971). The crux of Defendant's argument is that,

since the attack was so vicious that Susan feared Robert would kill her or inflict serious bodily harm, then Robert should have expected that he might suffer similar harm in retaliation.

■ The Court cannot hold as a matter of law that Defendant's conclusion is the only reasonable inference to be drawn from the facts. There is ample evidence from which a reasonable jury could conclude that Robert did not expect or foresee that he would suffer great bodily harm or death as a result of his attack on Susan. Robert had abused her for several years without any resultant injury. In fact, Susan had never tried to defend herself from these attacks. Therefore, a reasonable jury could conclude that this history of abuse without reprisal could have made Robert less likely to expect Susan would shoot him. *See Riggins,* 64 Ga.App. at 840–41, 14 S.E.2d 182 (stating that since fights between husband and wife were so common, jury could have found husband had no reason to believe wife would shoot him).

Mass Mutual points to the fact Robert had disarmed Susan prior to the fatal incident as evidence he thought she might shoot him. This evidence cuts both ways. Mass Mutual's argument has merit. On the other hand, the fact Robert had disarmed Susan might have made him a bit more secure and less likely to suspect she would shoot him. The Court finds that genuine issues of material fact exist as to whether Robert Pittman should have foreseen his wife would shoot him as a result of beating her on December 16, 1992. There is no dispositive evidence as to Robert Pittman's state of mind on that day.

### B. Whether Decedent was engaged in a Felony

Mass Mutual next claims that Susan cannot recover under the accidental death portion of the policies because Robert was engaged in a felony at the time he died. Specifically, Mass Mutual contends that Robert was committing the felony of aggravated assault. O.C.G.A. § 16-5-21. If Robert was engaged in a felony at the time of his death, Susan cannot recover because the policy ex-

cludes coverage in that event. Plaintiff asserts that, because local prosecutors most often treat domestic violence cases as misdemeanors, Robert only committed the crime of battery, a misdemeanor in Georgia. O.C.G.A. § 16-5-23.1.

The burden is on Mass Mutual to show that the decedent was engaged in a felony at the time of his death. *Riggins,* 64 Ga.App. at 836, 14 S.E.2d 182. There is no question Robert was assaulting Susan when he died, the issue is whether it was aggravated, thereby making it a felony.

"A person commits the offense of aggravated assault when he assaults: ... (2) with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." O.C.G.A. § 16-5-21. Whether an instrument is a "deadly weapon" is usually a question for the jury. *Quarles v. State,* 130 Ga.App. 756, 204 S.E.2d 467 (1974). An instrument is a deadly weapon if used in a manner likely to cause death or great bodily harm. *Banks v. State,* 169 Ga.App. 571, 314 S.E.2d 235 (1984) (holding a ceramic statue could be deadly weapon). The nature and location of the injuries inflicted is a factor in determining whether a weapon is deadly. *Wade v. State,* 157 Ga.App. 296, 277 S.E.2d 292 (1981).

Mass Mutual relies upon Susan's version of the events as proof that Robert was committing aggravated assault when he died. On the day Robert died, he began hitting and pushing Susan, presumably as he had done many times prior to that day. He hit her with a Motorola radio. He eventually pushed her onto the back porch where he hit her "better than eight times" with a small log one and one-half to two feet long and two to three inches in diameter. S. Pittman Dep. at 80. He struck her in the head causing injuries that required her to have staples inserted to close the wound. When she shot him, he had raised the log and was "swinging [it] like a bat" at her. *Id.* at 82. She testified that she shot him because she feared he would inflict serious bodily injury on her or kill her. The Court finds as a matter of law that a two foot long, three inch in diameter

log swung like a bat by a man weighing more than 200 pounds is a deadly weapon because, used in such a manner, it is likely to cause serious bodily injury or death. When the record clearly reveals that the decedent was engaged in conduct which precludes coverage under a policy exclusion, there is no question for the jury. *Quaker City Life Ins. Co. v. Sutson,* 102 Ga.App. 53, 58, 115 S.E.2d 699 (1960). Under the civil, preponderance of evidence standard, a reasonable jury could not find otherwise.

Susan contends that the fact that she pled guilty to the lesser offense of involuntary manslaughter is evidence her self defense claim is defective and that Robert's conduct did not constitute aggravated assault. This is speculation at best and does nothing to contravene the evidence she, as the only witness, gave about the events. She next contends that the bullet hole being in the back of Robert's head indicates she may not have shot him in self defense. However, she explained this when she testified that she shot him as he turned to swing the log at her. She also proffers statements by an investigating police officer and the assistant district attorney who prosecuted the case that there was evidence she did not act in self defense or at least used excessive force in self defense. Testimony by these people also implies that there was a lengthy delay between the shooting and the 911 call made by Mrs. Pittman. All of this amounts to speculation and hearsay, not competent evidence.

Finally, Plaintiff offers the testimony of an assistant district attorney ("ADA") as an "expert" to "instruct" the Court as to what is and is not a felony in the state of Georgia. The ADA simply testifies that it is local practice to prosecute cases of domestic violence as misdemeanors. However, if the facts fit objectively within the definition of a felony as defined by the legislature, then it is irrelevant whether or not local prosecutors prosecute them as such. The Court notes that there are many reasons a local district attorney may prosecute a crime as a lesser offense. That decision does not change the underlying nature of the crime. Therefore, there is no genuine dispute of material fact

as to whether Robert Pittman was committing a felony at the time he was killed.

## IV. Conclusion

While Susan Pittman, a battered wife, is a sympathetic Plaintiff, the Court cannot decide cases based on sympathy. When the law is clear and the facts demand a verdict for one party, the Court must hold accordingly, regardless of whether the party is an individual or an insurance company. Corporations are entitled to the same fair treatment in a court of law as an individual. Courts and judges must execute their obligations without favor.

The Plaintiff claims that Robert Pittman's death was an accident and denies that he was committing a felony when he died. While the Court finds that there is a genuine issue of material fact as to whether Robert's death was an accident, the Court also finds there is no genuine issue of material fact as to whether he was engaged in a felony at the time of his death. No reasonable jury could find Robert Pittman was not engaged in a felony at the time he died. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment. Defendant's motion for a continuance or special setting is **DENIED** as moot.

SO ORDERED.