**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 12, 2019**

# In the Court of Appeals of Georgia

A19A0685. PETTIS v. THE STATE.                                        GS-022C

GOSS, Judge.

On appeal from his conviction for family violence battery and simple assault, Jerry Wayne Pettis argues that the evidence was insufficient as to the assault, that trial counsel was ineffective, and that the trial court erred in requiring him to reimburse the State for his defense costs. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Thus viewed in favor of the jury's verdict, the record shows that on August 28, 2014, Pettis was living with his wife and her teenage son when he began arguing with his wife in the laundry room. The son did not confront Pettis because Pettis had previously choked him. When Pettis demanded the keys to the couple's car and attempted to get them from his wife's pockets, she resisted, at which Pettis grabbed her by the arms and threw her to the ground, where she landed on her elbows and knees. Pettis then grabbed the back of his wife's head, pushed it down into the floor, and twisted her arm behind her back. When Pettis told his wife that she was "not going anywhere," she went back into the house, where her son saw her injuries, including a welt on her forehead. The son then told Pettis, "You can't keep my mom here." At this, Pettis charged the son, who retreated into the house. When Pettis walked away from the door of the house, the victims escaped to a neighbor's house, where they called 911.

The victims made statements describing these events to officers arriving at the scene, but contradicted some of the details at trial, perhaps because, as they testified, they were afraid of Pettis. The State introduced a certified copy of a conviction

2

arising from the prior choking incident. Pettis was charged with two counts of family violence battery as to his wife and one count of simple assault as to her son. After a jury found Pettis guilty of all three crimes, he was convicted and sentenced to five years with three to serve. His out-of-time motion for new trial was denied on the merits, and this appeal followed.[1]

1. Pettis challenges the sufficiency of the evidence against him only as to the assault charge.

A person commits the offense of simple assault when he or she "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2). The crime of simple assault "is complete if there is a demonstration of violence, coupled with an apparent present ability to inflict injury so as to cause the person against whom it is directed reasonably to fear that he will receive an immediate violent injury unless he retreats to secure his safety." (Punctuation and footnote omitted.) *Daniels v. State*, 298 Ga. App. 736, 737 (681 SE2d 642) (2009). Moreover, "assault is an attempted battery, so the state must

---

[1] See *Washington v. State*, 276 Ga. 655, 656 (1) (581 SE2d 518) (2003) (when a trial court "implicitly granted" a defendant permission to file an out-of-time motion for new trial by means including "holding an evidentiary hearing on the merits of the motion" and "denying the motion . . . on its merits," a direct appeal was authorized) (citation omitted).

show that the defendant made a substantial step toward committing the battery." (Punctuation and footnote omitted.) Id.

Here, it was for the jury to determine whether, in light of the prior difficulties between them, Pettis's act of charging his stepson placed him in reasonable fear of receiving a violent injury. *Daniels*, 298 Ga. App. at 738 (evidence including that a defendant blocked the victim from escaping his presence as he shouted at her "authorize[d] the jury to find that [the victim] feared she would receive an immediate violent injury and that her fear was reasonable") (punctuation and footnote omitted). The evidence outlined above sufficed to sustain Pettis's conviction as to all of the charges against him. OCGA §§ 16-5-23.1 (defining family violence battery), 16-5-20 (a) (2) (defining simple assault); *Jackson*, supra.

2. Pettis argues that trial counsel was ineffective when he failed to object to portions of the prosecutor's closing argument. We disagree.

To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). As to deficient performance, "every effort must be made to eliminate the distorting effects

4

of hindsight," and the trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Citation and punctuation omitted.) *White v. State*, 265 Ga. 22, 23 (2) (453 SE2d 6) (1995). As to prejudice, a defendant need only show "a reasonable probability of a different outcome" due to trial counsel's deficient performance. (Punctuation and footnote omitted.) *Cobb v. State*, 283 Ga. 388, 391 (2) (658 SE2d 750) (2008). Finally, the question of ineffectiveness is a mixed one of both law and fact: "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Footnote omitted.) *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

(a) Pettis first objects to the State's assertions in closing argument that the victim was part of a cycle of violence characteristic of abused women, including self-blame and false reconciliation, with the victims sometimes "pos[ing] more of a threat to [a police] officer than the defendants do or the perpetrators" and eventually "working against" the State's case, as outside the scope of the evidence. Pettis also objects to the State's assertion that the victim had been "nasty to [the prosecutor's] office" and to the prosecutor "personally."

5

Given these victims' refusal to stand by their statements at the scene, the State's characterization of them as hostile witnesses was a reasonable extrapolation from the evidence presented at trial, and any objection would have been meritless. See *Hendrix v. State*, 298 Ga. 60, 66 (2) (d) (779 SE2d 322) (2015) (defense counsel was not ineffective for failing to object to prosecutor's comments during closing argument regarding witness intimidation, which "drew on reasonable inferences from admissible evidence and the trial proceedings" and was "within the wide realm of acceptable closing argument") (citation omitted); *Lewis v. State*, 317 Ga. App. 218, 225 (5) (735 SE2d 1) (2012) (when witnesses "recanted or minimized their initial complaints" against a perpetrator of domestic violence, it was highly improbable that a witness's improper testimony about the cycle of domestic violence contributed to the guilty verdict).

But even assuming that the State's argument was improper and that counsel's failure to object to that argument amounted to deficient performance, "the trial court instructed the jury that closing arguments were not to be considered as evidence[.]" *Grier v. State*, — Ga. App. — (2) (b) (Case No. S19A0634, decided May 20, 2019). In light of the evidence against Pettis, including the wife's written statement to police on the night of the incident, Pettis's other convictions arising from his prior

6

difficulties with the victims, and the wife's testimony that she did not remember the circumstances of those prior difficulties, "it cannot be said that there is a reasonable probability that the outcome would have been more favorable even if counsel had objected." Id.

(b) Pettis also objects to the State's argument that the jury should "let [Pettis] know that he might [commit these crimes] somewhere else, but he ain't gonna do it in Gwinnett County." At the hearing on the motion for new trial, however, counsel testified that the argument that Pettis should be held accountable by this jury did not deserve an objection, and we cannot reject either this reasonable strategy or the trial court's acceptance of it. See *Jowers v. State*, 272 Ga. App. 614, 617 (2) (613 SE2d 14) (2005) (prosecutor's appeal to the jury to find the defendant guilty in order to protect the community was not impermissible argument), disapproved on other grounds, *Miller v. State*, 285 Ga. 285, 287, n. 1 (676 SE2d 173) (2009); *Braithwaite v. State*, 275 Ga. 884, 886 (2) (b) (572 SE2d 612) (2002) (trial counsel's decision not to object to prosecutor's impermissible "golden rule" closing argument was a reasonable strategic decision and thus not ineffective).

3. Citing the current version of OCGA § 42-8-34,[2] Pettis argues that given his indigency, the trial court erred when it imposed a sentence including the reimbursement of attorney fees without a hearing on the issue. We disagree.

---

[2] OCGA § 42-8-34 provides in relevant part:

[(3)] (B) The court shall waive, modify, or convert fines, statutory surcharges, probation supervision fees, and any other moneys assessed by the court or a provider of probation services upon a determination by the court prior to or subsequent to sentencing that a defendant has a significant financial hardship or inability to pay or that there are any other extenuating factors which prohibit payment or collection; provided, however, that the imposition of sanctions for failure to pay such sums shall be within the discretion of the court through judicial process or hearings.

(C) Unless rebutted by a preponderance of the evidence that a defendant will be able to satisfy his or her financial obligations without undue hardship to the defendant or his or her dependents, a defendant shall be presumed to have a significant financial hardship if he or she: (i) [h]as a developmental disability; (ii) [i]s totally and permanently disabled; (iii) [i]s indigent; or (iv) [h]as been released from confinement within the preceding 12 months and was incarcerated for more than 30 days before his or her release.

(Emphasis supplied.)

At the time Pettis committed the crimes at issue[3] – that is, in August 2014 – former OCGA § 42-8-34 (e)[4] provided that "[t]he court may, in its discretion, require the payment of a fine or costs, or both, as a condition of probation." As our Supreme Court has noted, a trial court has the "general authority to order reimbursement of attorney fees" based on the "broad powers" granted to the trial court,[5] "unless expressly prohibited." *State v. Pless*, 282 Ga. 58, 61 (646 SE2d 202) (2007).

The record shows that after confirming that Pettis's counsel had been appointed rather than retained, the trial court pronounced sentence in relevant part as follows:

> The Court is sentencing you to 5 years, to serve the first 3 years in incarceration. You will get credit for the time that you have served. . . . You will enroll in and complete a family violence intervention program. You will have no contact with either of the victims in this case until you have completed that program. *You will also pay the onetime indigent defense application fee of $50, and you will reimburse*

---

[3] See *Richardson v. State*, 334 Ga. App. 344, 347 (1) (779 SE2d 406) (2015) ("[a] crime must be construed and punished according to the provisions of the law existing at the time of its commission") (punctuation and citation omitted).

[4] See Ga. Laws 2009, Act 42, § 1, effective July 1, 2009.

[5] See OCGA § 42-8-35 (a) ("The court shall determine the terms and conditions of probation[,]" and authorizing the court to impose at least 17 different terms of such probation).

9

*Gwinnett County for the attorney's fees that have been incurred on your behalf on this case.*

(Emphasis supplied.) No objection was made to this or any other part of the sentence, including the court's implicit finding that Pettis was indigent, which confirmed an earlier finding at Pettis's first appearance.

It is true that in the absence of "any valid penal objective by [a] state statute . . . that convert[s] a fine into a term of imprisonment for failure to pay the fine[,]" the State "may not constitutionally imprison beyond the maximum duration fixed by statute a defendant who is financially unable to pay [that] fine." *Hunter v. Dean*, 240 Ga. 214, 216-217 (239 SE2d 791) (1977), overruled on other grounds, *Massey v. Meadows*, 253 Ga. 389, 389 (321 SE2d 703) (1984). As our Supreme Court held in *Pless*, however, a defendant seeking to challenge a trial court's imposition of court-appointed attorney fees as restitution must make a "contemporaneous objection" at the time of sentencing. 282 Ga. at 60. Because Pettis failed to object to the trial court's imposition of the attorney fees at the time of sentencing, we have nothing to review on appeal.[6] *Pless*, 282 Ga. at 61 (where a trial court had the authority to

---

[6] We also note that Pettis has not asserted below or on appeal that trial counsel was ineffective in failing to object to the fee reimbursement portion of Pettis's sentence on the ground that no evidentiary hearing on his ability to pay had been held.

10

impose a sentence including reimbursement of attorney fees, a defendant's failure to

object at trial and on appeal waived any issue as to that sentence).

*Judgment affirmed. McFadden, P. J., and McMillian, J., concur*.

See, e.g., *Wilson v. State*, 277 Ga. 195, 199 (586 SE2d 669) (2003) (when the issue of trial counsel's effectiveness has been raised on motion for new trial, "any claims not raised at that time are waived") (citations omitted).