**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 21, 2020**

# In the Court of Appeals of Georgia

A20A1167. IN THE INTEREST OF T. P., a child.

MCFADDEN, Chief Judge.

T. P. was adjudicated delinquent for simple assault. He appeals the adjudication, arguing that the evidence was insufficient to prove simple assault and that the juvenile court violated his right to testify on his own behalf. We hold that the evidence was not sufficient to support the adjudication. So we reverse. We do not reach T. P.'s argument that the juvenile court violated his right to testify on his own behalf.

> The standard of review [of an adjudication of delinquency] is the same as a criminal case: In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could

have found, beyond a reasonable doubt, that the juvenile committed the acts charged.

*In the Interest of J. L. K.*, 302 Ga. App. 844, 847-848 (2) (691 SE2d 892) (2010) (citations and footnote omitted).

So viewed, the record shows that T. P. was a student at a DeKalb County middle school. The school resource officer testified that he was called to the gym because of an unruly student. Before he reached the gym, he encountered an assistant principal standing with T. P. in the hallway. T. P.'s fists were clenched, he was sweaty and breathing heavily, and he began cursing.

The officer asked T. P. to accompany him to his office so that they could talk. He put his hand on the small of T. P.'s back to direct him toward his office. T. P. turned toward the officer, was "in [his] face," and responded, "Fuck, no. I ain't going nowhere and you better not fucking touch me." According to the officer, T. P. looked as if he were ready to fight, but he never swung at the officer. The officer turned T. P. around by his shoulder and took him to the office. The officer testified that when T. P. turned toward him, T. P.'s "gestures caused [him] to fear that [he] may be able to receive physical or bodily injury based off his body language."

2

The delinquency petition alleged that T. P. committed simple assault "when he did commit an act which placed [the] School Resource Officer . . . in reasonable apprehension of immediately receiving a violent injury by telling said officer 'nobody better fucking touch me' while standing with both fists closed tightly." OCGA § 16-5-20 (a) (2) provides that "[a] person commits the offense of simple assault when he or she . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." A reasonable fact finder could not have found from the testimony at the adjudication hearing that T. P. committed an act that placed the officer in reasonable apprehension of immediately receiving a violent injury.

The only act the officer described was T. P. turning around when the officer placed his hand on T. P.'s back while T. P. was visibly angry. But to support a simple assault conviction or adjudication, there must be "a demonstration of violence." *In the Interest of C. S.*, 251 Ga. App. 411, 413 (554 SE2d 558) (2001) (citation and punctuation omitted); *Hudson v. State*, 135 Ga. App. 739, 740-741 (1) (218 SE2d 905) (1975). See also *State v. Rooks*, 266 Ga. 528, 529 (468 SE2d 354) (1996) (assault requires "a demonstration of violence and a present ability to inflict injury").

As detailed in the margin, that requirement predates the codification of apprehension-of-injury type of assault. *Thomas v. State*, 99 Ga. 38, 44 (26 SE 748) (1896)[1] (an assault is complete "if there be such a demonstration of violence, coupled with an apparent ability to inflict the injury, so as to cause the person against whom it is directed reasonably to fear the injury unless he retreat to secure his safety, and under such circumstances he is compelled to retreat to avoid an impending danger").

The only act the officer described, T. P.'s act of turning toward the officer when the officer placed his hand on T. P.'s back, was not a demonstration of violence, even though T. P. was visibly angry. Our courts never have held the kind of act

[1] Our Supreme Court decided *Thomas* in 1896, well before the apprehension-of-injury type of assault was codified. In 1968, the General Assembly adopted the apprehension-of-injury theory of assault of OCGA § 16-5-20 (a) (2); until then, only the attempted-battery type of assault of OCGA § 16-5-20 (a) (1) was included in our criminal statutes. *Patterson v. State*, 299 Ga. 491, 505 (2) (b) (789 SE2d 175) (2016) (Blackwell, J., dissenting). Nonetheless, "[a]lthough the 1968 enactment marks the first explicit acknowledgment in our statutory law of criminal assault by an act that arouses a reasonable apprehension of imminent and violent injury, [our Supreme] Court already had effectively recognized that sort of assault by judicial decision, even under statutory law that defined assault exclusively in terms of an attempt to inflict injury. When it proposed this revision of the statutory law concerning assault, the Criminal Law Study Committee reported to the General Assembly that the revision 'is the former Georgia law,' citing *Crumbley* [*v. State*, 61 Ga. 582 (1878)] and *Thomas*[, supra, 99 Ga. at 38]." *Patterson*, 299 Ga. 505 (2) (b) (Blackwell, J., dissenting) (citation omitted). So as stated in *Thomas*, 99 Ga. at 44, the "demonstration of violence" requirement applies to the apprehension-of-injury type of assault.

committed by T. P. to be an assault. The kinds of acts our courts have found to be apprehension-of-injury assaults include: a defendant pointing a gun at the victim, *Overton v. State*, 305 Ga. 597, 599 (2) (825 SE2d 159) (2019); *Johnson v. State*, 122 Ga. App. 542 (1) (178 SE2d 42) (1970); a defendant driving a vehicle at the victim, *Patterson v. State*, 299 Ga. 491, 495-496 (789 SE2d 175) (2016); a defendant charging the victim, with whom the defendant had prior difficulties, causing the victim to retreat, *Pettis v. State*, 350 Ga. App. 421, 423 (1) (829 SE2d 613) (2019); a defendant forcing his way into a victim's car, driving the car, with the victim still in it, and telling the victim that he had a gun, *Walker v. State*, 306 Ga. App. 16, 18 (2) (701 SE2d 523) (2010); a defendant refusing the victim's direction to leave a conference room and then blocking the victim from leaving while shouting at her, *Daniels v. State*, 298 Ga. App. 736 (681 SE2d 642) (2009); a defendant entering the victim's home uninvited and struggling with the victim as she attempted to pass him, *Port v. State*, 295 Ga. App. 109, 110 (1) (671 SE2d 200) (2008); a defendant retrieving a cup of bleach solution from under a sink and threatening to throw the liquid in the victim's face, *Brown v. State*, 288 Ga. App. 812 (655 SE2d 692) (2007); a juvenile angrily cursing and screaming at the victim, taking a pot of boiling water off of the stove, and standing near the victim and staring at her while holding the pot

5

of boiling water, *In the Interest of T. Y. B.*, 288 Ga. App. 610 (654 SE2d 688) (2007); a juvenile, while in a confined office with a school administrator, removing his outer clothing and his watch, balling his fists, squaring his shoulders, and asking the victim, "Now what are you going to do?", *In the Interest of D. B.*, 284 Ga. App. 445, 447-448 (1) (644 SE2d 305) (2007); a defendant angrily throwing a wooden board at the victim, causing the victim to step back in order to avoid being hit, *Trzepacz v. State*, 240 Ga. App. 410, 410-411 (1) (523 SE2d 599) (1999); a defendant breaking into a victim's home, advancing upon her with a steel pipe, and causing the victim to flee in terror, *McKinney v. State*, 218 Ga. App. 633, 634-635 (2) (463 SE2d 136) (1995). Unlike these cases, here there was no evidence that T. P. made any threatening, physical gesture from which a fact finder could find a demonstration of violence.

Citing *In the Interest of J. H.*, 354 Ga. App. 253 (840 SE2d 633) (2020), the state argues that evidence that T. P. charged the officer supports the adjudication. We disagree. In *In the Interest of J. H.*, the juvenile charged the victim, who was standing by a car outside of a house, by exiting the house and "run[ning] up on him" while holding a butcher knife. Id. at 254 (1), 256-257 (3) (punctuation omitted). Here, the officer testified that T. P. turned toward him while the officer's hand was on T. P.'s back and that T. P. remained in the same location during the entire encounter. The

6

only testimony referencing a "charge" came when T. P.'s attorney asked the officer whether T. P. swung at him and the officer responded, "No. Just his — his charge came when he turned towards me." No reasonable fact finder could interpret the officer's use of the word "charge" in his testimony to mean violently rushing toward him like the charge described in *In the Interest of J. H.*

Nor was the officer's testimony sufficient to allow a reasonable fact finder to have found, beyond a reasonable doubt, that T. P.'s turning toward him caused him to apprehend immediately receiving a violent injury, as OCGA § 16-5-20 (a) (2) requires. To support an assault conviction, the injury that a victim apprehends from a defendant's act must be "*imminent* and violent." *Patterson*, 299 Ga. at 496 (Blackwell, J., dissenting) (emphasis added). "[T]he apprehension of future injury is not sufficient to convict a defendant of simple assault." *Lewis v. State*, 253 Ga. App. 578, 580 (560 SE2d 73) (2002). See also *Hudson*, 135 Ga. App. at 740-741 (1) (defendant could not be convicted of assault for proceeding to another room to get a gun to prevent officers from arresting his mother because officers were not apprehensive of an immediate, violent injury). The officer's testimony that he apprehended "that [he] may be able to receive physical or bodily injury" demonstrates

that the officer perceived the possibility of injury, not that he perceived that he would receive an imminent injury.

For these reasons, we conclude that the evidence does not support the adjudication of delinquency. We do not reach T. P.'s argument that the juvenile court violated his right to testify on his own behalf.

*Judgment reversed. Doyle, P. J., and Hodges, J., concur.*