179 Ga. App. 800 (1986)
348 S.E.2d 126
IN RE G. M. M.
72721.
Court of Appeals of Georgia.
Decided July 16, 1986.
Macklyn A. Smith, Sr., for appellant.
Michael Green, for appellee.
DEEN, Presiding Judge.
G. M. M. brings this appeal from an order of the Gwinnett County Juvenile Court, which found she had committed a delinquent act, obstruction of a law enforcement officer, but that no treatment or rehabilitation was necessary.
The evidence showed that on January 27, 1986, T. P. K., a fourteen-year-old escapee from a juvenile detention center located near appellant's home, came to the house seeking shelter. The girl was a total stranger to the family. The temperature was about 6 degrees F. outside, and the girl was very cold and hyperventilating. Appellant's mother let her into the house after determining that she was alone and unarmed. The mother and daughter soon determined that T. P. K. was a runaway. She informed them that she was three months pregnant and wanted to use the phone to call someone to take her to see her boyfriend. For obvious safety reasons, the mother refused. The girl told them that she was from Florida, that she had been physically abused by her stepfather, and that her mother wanted to force her to have an abortion. Appellant suggested that they call Gary Wise, the Youth Director at their church, for advice.
Appellant's mother spoke to the youth director and told him what she knew about the girl. He called his uncle, David Peek, a Gwinnett County detective, who made an inquiry and determined that T. P. K. was an escapee from the youth detention center, and advised Wise that she would have to be turned in or they could all be charged with harboring a fugitive. Wise and appellant's mother tried to talk the girl into turning herself in, but she refused. After several conversations with Wise, appellant's mother decided that it would be best if she took the girl to a nearby pay telephone on the pretext that she could call her friend, and that police officers in plain clothes could come and arrest her there. Appellant's mother was concerned about the girl's physical condition and also did not want her to feel that she *801 had been betrayed by the people she had turned to for help. G. M. M. accompanied her mother and the girl to the telephone. The police arrived while she was trying to make a call.
David Peek was one of the arresting officers. He testified about receiving the calls from Gary Wise and stated that the young girl did not know she was going to be picked up. He said that he and another officer pulled up in an unmarked car, activated the blue lights, and identified themselves as police officers to the three people at the telephone. He observed that the young girl using the phone matched the description of the escapee from the youth detention center. He asked her name, and she replied, "Melissa." He asked appellant's mother what the girl's name was, and she said, "Melissa," and added that she was her aunt. She then handed the girl a twenty-dollar bill and said, "Here, T ____" and then stopped and said, "Melissa." After the officer had T. P. K. remove her stocking cap, revealing recently cut short blonde hair, he placed her under arrest. He stated that G. M. M. stepped between him and T. P. K. and said, "This is my sister, Melissa." The officer pushed by her and grabbed T. P. K. by the arm. He testified that G. M. M. said, "Don't touch me," and pushed his arm. The other officer approached and led T. P. K. to the patrol car. He told G. M. M. to have a seat in the patrol car with her, and she said, "Don't touch me." The officer took her by the arm, placed her under arrest, and led her to the patrol car. Appellant's mother grabbed him by the arm, and the other officer arrested her.
G. M. M. testified that she did not see the officers flash their blue lights because she was turned towards the phone booth, and that they did not identify themselves in any way. She did not know of the arrangement made between Gary Wise and her mother to have T. P. K. picked up. She stated that T. P. K. said she was "Melissa" and then turned to her mother and said, "Please tell them you are my mother . . . tell `em, so they won't get me"; she then turned to the officers and said, "She will tell you," and the mother said, "Yes, that is T ____, I mean Melissa." Appellant stated that her mother thought the officer knew what was going on, and stepped back. She denied stepping in front of the officer when he took hold of T. P. K.'s cap and said, "You look like a T ____ to me." She stated that she did not say anything because she had figured out who the men were. She denied standing in their way when they arrested T. P. K. She admitted brushing the officer's hands away when they told her she was going to the juvenile detention center, and telling him to keep his hands off her. When asked about her mother's testimony that she used the name "Michelle" to refer to the girl, she stated that when T. P. K. said her name was "Melissa," she said very quietly, "That is Michelle," and denied saying that she was a relative. Held:
1. Appellant contends that the trial court erred in adjudicating *802 her delinquent as having violated OCGA § 16-10-24, obstruction or hindering of law enforcement officers.
We find no evidence to support an adjudication that this fourteen-year-old young lady was delinquent. Indeed, she was the one who suggested seeking help from the youth director at her church when it was determined that T. P. K. was in some sort of trouble, and she was willing to go along with whatever plan her mother and Gary Wise had worked out with Wise's uncle, David Peek, the arresting officer. G. M. M. obviously gave the fictitious name "Michelle" in contradiction of the name "Melissa" given by the young escapee, as a tip that she was not really "Melissa." It is equally obvious that both G. M. M. and her mother felt sympathy for the youthful offender and did not want her to feel that she had been betrayed.
We find a complete lack of intent to obstruct the officers. If there had been such an intent, appellant and her mother would not have contacted Wise, or agreed to the plans made by Wise and his uncle for the surrender of the juvenile to the authorities. G. M. M. had not been given details of the plan because of a lack of time and opportunity for her mother to speak to her privately. As for telling the officer to take his hands off her and brushing his hand off her, what is the offense? She did not try to attack the officer or run away. She did get into the patrol car as ordered. A mere verbal exchange with an officer accompanied by no verbal or physical threats of violence does not constitute a violation of OCGA § 16-10-24. Moccia v. State, 174 Ga. App. 764, 765 (331 SE2d 99) (1985).
All of the character evidence presented on behalf of G. M. M. showed that she was a fine, honest, and upstanding member of the community. We find no basis for the finding that she committed a delinquent act.
2. Because of the necessity of reversing the judgment in the instant case, we do not address appellant's remaining enumeration of error.
Judgment reversed. Benham and Beasley, JJ., concur.