A02A1603. IN THE INTEREST OF T. H., a child.
(574 SE2d 461)

BARNES, Judge.

A juvenile court found T. H. delinquent for the offenses of curfew violation and driving without a license. He was also found to have committed the offenses of driving without insurance, without a taillight, and without a tag. The record shows that the State filed both a petition for delinquency asserting that T. H. had violated OCGA § 40-5-20 by driving without a license and a petition alleging that T. H.

was unruly for committing a curfew violation.[1] In its order, the juvenile court ruled that T. H. committed the offenses of curfew violation and driving without a license and adjudicated him delinquent.

On appeal, T. H. contends that the trial court's adjudication of delinquency was in error because (1) the State failed to establish that he was "unruly" pursuant to OCGA § 15-11-2 (12) and (2) the evidence was insufficient to support the verdict for the traffic offenses. Although we affirm the juvenile adjudication for the traffic offenses, we must reverse the adjudication that T. H. was unruly because we find that the State did not prove that T. H. was wandering or loitering between the hours of 12:00 a.m. and 5:00 a.m. as required by OCGA § 15-11-2 (12) (E).

On January 15, 2002, at approximately 12:25 a.m., Griffin Police Department Officer Oxford observed a dirt bike with no taillights, headlights, or tag traveling south on Tenth Street. The motor bike turned left onto Central Avenue and began proceeding up the street's incline in the wrong lane. Officer Oxford made the traffic stop and discovered that the motor bike was not registered or insured and that the driver, T. H., was unlicensed. Officer Oxford testified that, while the motor bike was equipped for off-road use, it was not "street legal," and therefore it could not be driven on the street.

The transcript further shows that the officers testified that when T. H. was stopped by the officers, he was on his way from his grandmother's house to his own home, that he lives in the area in which he was stopped, and that one could see T. H.'s home from where he was stopped. T. H. testified that he had fallen asleep at his grandmother's house after working with his uncle, and that when he woke up, he left without looking at the clock. He also testified that his grandmother lives about two blocks from his house.

1. T. H. argues that the evidence was insufficient to support the traffic offenses. "On appeal the evidence must be viewed in a light most favorable to support the findings and judgment." *In the Interest of A. D. C.*, 228 Ga. App. 829, 830 (493 SE2d 38) (1997). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Moreover, the juvenile court judge, as trier of fact, resolves conflicts in the evidence, and this Court reviews only the sufficiency, not the weight, of the evidence. *In the Interest of J. J. K.*, 232 Ga. App. 470 (502 SE2d 313) (1998).

Although T. H. argues that he was "not guilty" of the traffic offenses because he drove on the shoulder of the road, rather than in the street, and that he only cranked the motor bike so that he could

---

[1] An "unruly child" is statutorily defined as "a child who . . . [w]anders or loiters about the streets of any city, or in or about any highway or any public place, between the hours of 12:00 Midnight and 5:00 A.M." OCGA § 15-11-2 (12) (E).

get it up a hill, both police officers testified that they saw T. H. riding his dirt bike in the street. The State also presented testimony from another police officer who observed T. H. operating his dirt bike on a public street approximately two weeks before the September incident. He testified that the dirt bike had no taillights, headlights, or tag, and that after giving T. H. a warning, he talked with T. H.'s mother about the incident.

We find that there was sufficient evidence from which any rational trier of fact could conclude beyond a reasonable doubt that T. H. committed the traffic offenses of which he was charged. See *In the Interest of J. J. K.*, supra.

2. Although acknowledging that the State proved that he was stopped by the police after midnight and before 5:00 a.m., T. H. contends that the State failed to prove the necessary elements to establish that he was unruly within the meaning of OCGA § 15-11-2 (12) (E) because no evidence showed that he was wandering or loitering about the streets.

Although commonly referred to as a curfew, when enacting OCGA § 15-11-2 (12) (E), the General Assembly did not establish a traditional curfew. A curfew usually requires whole populations, or classes of the population, to remain indoors and off the streets during specified hours. See, e.g., Oxford American Dictionary of Current English, p. 190; Webster's New World College Dictionary, p. 354; American Heritage Dictionary, p. 350. Here, OCGA § 15-11-2 (12) (E) defines an "unruly child" as "a child who . . . [w]anders or loiters about the streets of any city, or in or about any highway or any public place, between the hours of 12:00 Midnight and 5:00 A.M."

Recognizing that the curfew applies only to juveniles wandering or loitering between the hours of midnight and 5:00 a.m., the State argues the evidence was sufficient to prove that T. H. was wandering about the streets when he was stopped by the police.[2] We disagree.

The State relies upon a definition of wander, "to travel about, on, or through," contained in Random House Webster's School & Office Dictionary (1st ed. 1995), p. 507, and argues that, because T. H. admits that he was traveling from his grandmother's house to his house, this conduct satisfies the requirement that he was wandering.

---

[2] The State deduces that "T. H. may not have been loitering under the definition by *Webster's*, but if he had not loitered earlier in the evening, he might not have felt the need to crank his Kawasaki and drive it home after midnight." Obviously, as the State recognizes in its brief, the evidence was not sufficient to establish that T. H. was loitering when he was stopped. See OCGA § 16-11-36; *Bell v. State*, 252 Ga. 267, 271 (1) (313 SE2d 678) (1984) (the offense of loitering requires conduct " 'not usual for law abiding [citizens]' " which creates alarm or concern for safety of persons or property). See also *State v. Burch*, 264 Ga. 231 (443 SE2d 483) (1994) (affirming *Bell* that conduct must be such that creates alarm in reasonable person).

Under the State's reasoning, no requirement exists that there be a lack of purpose in T. H.'s travels. The State argues that under its definition T. H. need only be "moving from point A to point B" to be wandering.

Our task in interpreting this Code section, however, is not merely to find a particular dictionary definition. Instead, we must find the ordinary signification given to "wander."

> In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter. In the absence of words of limitation, words in a statute should be given their ordinary and everyday meaning.

(Citations and punctuation omitted.) *Mgmt. Compensation Group/ Southeast v. United Security Employee Programs*, 194 Ga. App. 99, 102 (2) (389 SE2d 525) (1989). We note that the definition the State relies upon is the fifth definition in that particular dictionary. The dictionary's other definitions of "wander" are: "1. to move around without a definite purpose; 2. to go or extend in an irregular course or direction; 3. to stray from a path or subject, to deviate in conduct or belief, to go astray"; and finally "5. to travel about, on, or through." Random House Webster's School & Office Dictionary, supra.

We have found only one other dictionary that gives the State's definition as a possible definition of "wander." Random House Webster's Unabridged Dictionary (2nd ed. 1997), p. 2144, gives as its ninth definition of "wander": "to travel about, on, or through," and gives as an example, "[h]e wandered the streets." It gives as its first two definitions, however, "to ramble without a definite purpose or objective; roam, rove, or stray. 2. to go aimlessly, indirectly, or casually."

All the other dictionaries we considered, however, did not provide the State's definition. For example, Webster's New World College Dictionary (4th ed. 2001), p. 1610, defines "wander" as "moving or going about aimlessly without plan or fixed destination" or "going to a destination in a casual way or by an indirect route." Oxford American Dictionary of Current English (New American ed. 1999), p. 918, gives the definition of "going from place to place aimlessly, diverging or meandering." American Heritage Dictionary (2nd college ed. 1985), pp. 740-741, provides the definitions: "to move about with no destination or purpose, roam aimlessly. 2. to go by an indirect route or at no set pace, amble." Finally, Black's Law Dictionary (6th ed. 1991), p. 1581, states the definition as "to ramble here and there

without any certain course," as in "to ramble without definite purpose or objective, to roam, rove, or stray, and go aimlessly, indirectly, or casually."

Merely compiling a number of possible dictionary definitions, however, does not end our task, for statutes are to be construed in accordance with their real intent and meaning and not so strictly as to defeat the legislative purpose. *Johnson v. Housing Auth. of Atlanta*, 198 Ga. App. 816-817 (403 SE2d 97) (1991). Therefore, we must read OCGA § 15-11-2 (12) (E) according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation. *Burbridge v. Hensley*, 194 Ga. App. 523, 524 (1) (391 SE2d 5) (1990). Further, "[i]n construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry." (Citations omitted.) *Diefenderfer v. Pierce*, 260 Ga. 426-427 (396 SE2d 227) (1990). Indeed, statutory construction " 'must square with common sense and . . . reasoning.' " *Tuten v. City of Brunswick*, 262 Ga. 399, 404 (7) (a) (i) (418 SE2d 367) (1992).

Also, the meaning of a statutory clause depends upon the intention with which it is used as manifested by its context and considered with reference to the subject matter to which it relates. *Thomas v. MacNeill*, 200 Ga. 418, 424 (37 SE2d 705) (1946). In this sense, we note that "wander" is coupled with "loiter" in the Code section.

Therefore, although we acknowledge that some other dictionary may also list the State's definition as one of the possible definitions of "wander," that would not change our result because we do not find that this definition conveys the ordinary signification of "wander." Applying OCGA § 1-3-1 (b) that "[i]n all interpretations of statutes, the ordinary signification shall be applied to all words," we find that under the circumstances presented here, "wander" means to go about aimlessly and without purpose or destination, or in current vernacular — hanging out or roaming the streets. In particular, we reject the notion that a juvenile returning home or proceeding to a destination certain would be wandering within the meaning of the Code section.

We find it significant that the General Assembly did not impose a curfew on all juveniles out after midnight and before 5:00 a.m. Instead, the Code section only applies to juveniles who were wandering or loitering on the streets, highways, or public places between those hours. Accordingly, we find that the juvenile court's adjudication that T. H. was an unruly child must be reversed.

However, the evidence was sufficient to prove that he committed a delinquent act. Delinquent acts are defined as acts "designated [crimes] by the laws of this state, or by the laws of another state if

the act[s] occurred in that state, under federal laws, or by local ordinance. . . ." OCGA § 15-11-2 (6) (A). T. H. was also adjudicated delinquent for the offense of driving without a license in violation of the laws of this State. Therefore, the juvenile court's adjudication of delinquency based upon this offense is affirmed. Accordingly, the case is remanded to the juvenile court for reconsideration of the disposition based upon the adjudication of delinquency based on the offense of driving without a license only.

*Judgment affirmed in part, reversed in part and remanded with instruction. Ruffin, P. J., and Pope, Senior Appellate Judge, concur.*

DECIDED NOVEMBER 18, 2002.

*Sullivan & Sturdivant, Harold A. Sturdivant, Michele W. Ogletree*, for appellant.

*William T. McBroom III, District Attorney, James E. Sherrill, Daniel A. Hiatt, Robert H. English, Assistant District Attorneys*, for appellee.