A06A0688. IN THE INTEREST OF R. F., a child.
(632 SE2d 452)

MIKELL, Judge.

A juvenile court found R. F., a sixteen-year-old boy, delinquent for committing two felony counts of theft by taking motor vehicle, OCGA § 16-8-2. He was also found to have committed the offenses of curfew violation, OCGA § 15-11-2, loitering and prowling, OCGA § 16-11-36, and criminal trespass, OCGA § 16-7-21 (a), as a lesser included offense of burglary. He was acquitted of two counts of theft by receiving, OCGA § 16-15-5. R. F. appeals, challenging the sufficiency of the evidence and alleging that a fatal variance existed between the amended delinquency petition and the state's proof at trial. We find no error, and affirm.

On appeal from a delinquency adjudication, we view the evidence in a light most favorable to support the juvenile court's findings and judgment.[1] Moreover, the juvenile court resolves conflicts in the evidence, and this Court reviews only the sufficiency and not the weight of the evidence.[2] So viewed, the evidence shows that on June 15, 2005, at 1:30 a.m., Officer Jimmy Black of the Clayton County Police Department responded to a suspicious persons call on Pine Grove Road in Clayton County. Upon arriving on the scene, Black observed a white Saab sitting on the side of the road with its hood up, and a BMW in the middle of the road. The BMW subsequently parked

---

[1] See *In the Interest of T. H.*, 258 Ga. App. 416, 417 (1) (574 SE2d 461) (2002).

[2] Id. See also *In the Interest of E. G. W.*, 244 Ga. App. 119 (534 SE2d 869) (2000).

behind the Saab. Four black males, including R. F. and his co-defendant Q. S. (collectively "the motorists"), and one white male, Samuel Christmas, a nearby resident who came to help the motorists, were standing around the Saab. The motorists told Black that the Saab belonged "to a white woman and she walked up the road. She broke down and she walked up the road." When Black spoke individually to R. F., he stated that he did not know who owned the car. Q. S. also told Black that he did not know who owned the car. According to Black, the motorists did not have identification and could not explain their presence in the area. R. F. and Q. S. were arrested for curfew violation and loitering and prowling, and during the search incident to arrest, Black found a key to the BMW in R. F.'s pocket. Several days later, Black learned that both vehicles had been stolen from A-1 Auto Repair ("A-1"), an automotive repair shop located on Pine Grove Road, a few hundred feet from where Black encountered the motorists.

Christmas testified that when he first observed the vehicles they were exiting a driveway connected to businesses on Pine Grove Road. Upon entering the roadway, the Saab broke down. The BMW continued on the roadway, but then turned around and came back to the Saab.

Ola Aina, the owner of A-1, confirmed that a white Saab and a BMW had been taken from his shop on or about June 15, 2005. Aina testified that his shop is located at 6030 Highway 85, Suite 802; that when he left work on June 14, 2005, both vehicles were parked in a fenced storage area he shares with another automotive repair shop; that the fence was locked and intact; that all of the vehicles in the storage area were unlocked and the keys were left in the vehicles; that when he returned to work on June 15, 2005, he saw that someone had driven a Mercedes through the fence; that the Mercedes was stuck on the fence; that the resulting hole was large enough for three cars to drive through at the same time; that the Saab and BMW were missing; and that there were fresh tire tracks on the ground. According to Aina, the fenced lot sits by itself 40 to 50 yards from his shop and is used as an overflow area for cars awaiting repair.

The Saab owner testified that she brought her car to A-1 and that only A-1 employees had permission to drive the car. She told the court that she did not know R. F. or Q. S. and that neither juvenile had permission to drive her car. The BMW owner similarly testified that she had brought her car to A-1; that only A-1 employees had permission to drive her car; and that neither R. F. nor Q. S. had permission to drive her car.

1. R. F. contends there was a fatal variance between the amended delinquency petition and the state's proof at trial. Specifically, R. F. points out that the amended petition alleged that he entered or

remained in a building owned by Aina, while the proof at trial showed that the alleged perpetrator entered the detached outdoor storage lot shared by Aina and another business owner.[3] We find no error.

The amended petition alleged that,

> [R. F.] . . . , on or about 6-15-05, did commit the offense of BURGLARY, in that said child did, without authority and with intent commit a theft or a felony therein, enter or remain in a building, railroad car, aircraft, or any room or part thereof which was not designed for use as the dwelling house of another, being 6030 Hwy. 85, Suite 802, property of Ola Aina.

The general rule that allegations and proof must correspond is based upon the following requirements: "(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense."[4] "A variance is not fatal if the accused is definitely informed as to the charges against him and is protected against another prosecution for the same offense for the present trend of case law is away from the overly technical application of the fatal variance rule."[5] In this case, the undisputed evidence showed that Aina owned a detached fenced lot, located 40 or 50 yards from his repair shop, at the address specified in the indictment, and that on or about June 15, 2005, someone destroyed the fence and took two vehicles. The variance between the indictment and the proof did not misinform or mislead R. F. in any manner that surprised him at trial or impaired his defense. Nor can he be subjected to another prosecution for the same offense. Accordingly, there was no fatal variance between the allegations and the proof.[6]

2. In several enumerations of error, R. F. challenges the sufficiency of the evidence supporting the juvenile court's findings on all charges.

(a) R. F. contends the state failed to prove that he was wandering or loitering about the streets as required to sustain a finding of curfew

---

[3] As previously noted, the juvenile court found R. F. delinquent of the lesser included offense of criminal trespass. The court rejected the burglary charge because the fenced lot was not attached to A-1's building.

[4] (Citations omitted.) *Nelson v. State*, 269 Ga. App. 103, 106 (2) (603 SE2d 691) (2004).

[5] (Citations and punctuation omitted.) Id. at 106-107 (2).

[6] Compare *Charles v. State*, 167 Ga. App. 806 (307 SE2d 703) (1983) (fatal variance where indictment alleged burglary of victim's warehouse at specific address, but proof at trial showed that crime actually occurred at another of the victim's warehouses at a different address).

violation, OCGA § 15-11-2 (12) (E), and loitering and prowling, OCGA § 16-11-36 (a). Rather, the evidence merely showed that R. F. was on a public road, in a mixed residential and commercial area, standing next to a disabled car.

Under OCGA § 15-11-2 (12) (E), an "unruly child" commits the offense of curfew violation when he "[w]anders or loiters about the streets of any city, or in or about any highway or any public place, between the hours of 12:00 Midnight and 5:00 A.M."[7] Under OCGA § 16-11-36,

> (a) [a] person commits the offense of loitering or prowling when he is in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. (b) Among the circumstances which may be considered in determining whether alarm is warranted is the fact that the person takes flight upon the appearance of a law enforcement officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object.[8]

Our Supreme Court has defined loitering as "conduct not usual for law abiding individuals which creates a reasonable alarm or immediate concern for the safety of persons or property in the vicinity."[9] This Court has held that "wander" means "to go about aimlessly and without purpose or destination, or in current vernacular — hanging out or roaming the streets."[10] Black's testimony that he encountered the juveniles at 1:30 a.m., that they could not explain their presence in the area, that they did not have identification, and that they gave conflicting stories about the owner of the vehicle was sufficient to prove the offenses beyond a reasonable doubt.[11] Moreover, as OCGA § 16-11-36 (b) is not exclusive or exhaustive of possible circumstances to be considered in "determining whether alarm is warranted," it is immaterial that R. F. did not attempt to flee from Black, did not refuse to identify himself, or did not attempt to conceal himself.

---

[7] OCGA § 15-11-2 (12) (E).

[8] OCGA § 16-11-36 (a), (b).

[9] (Punctuation omitted.) *Bell v. State*, 252 Ga. 267, 271 (1) (313 SE2d 678) (1984).

[10] (Citation and punctuation omitted.) *In the Interest of A. A.*, 265 Ga. App. 369, 373 (2) (593 SE2d 891) (2004).

[11] See, e.g., *Blair v. State*, 216 Ga. App. 545, 547 (2) (455 SE2d 97) (1995). Compare *In the Interest of T. H.*, supra at 420 (2) (rejecting the notion that a juvenile returning home or proceeding to a destination certain would be "wandering" within the meaning of the Code section).

(b) R. F. argues that the evidence was insufficient to support the offenses of theft by taking because there is no proof that he was present when the vehicles were taken. The state contends there was sufficient evidence to find R. F. delinquent as a party to the crime. A person commits the offense of theft by taking when he unlawfully takes any property of another with the intention of depriving him of the property.[12]

R. F. was with the motorists at 1:30 a.m. on June 15, 2005, when they were seen driving and riding in vehicles that were later discovered to have been stolen from A-1 sometime between 6:00 p.m. on June 14, 2005, and 8:00 a.m. on June 15, 2005. Christmas testified that he saw the vehicles exit a driveway near A-1 shortly before the Saab broke down. Black testified that the Saab broke down a few hundred feet from A-1, where it had been brought for repair, and that the BMW circled back to assist the Saab. The motorists gave conflicting stories about the owner of the Saab, and Black discovered the BMW key in R. F.'s pocket. Even though there was no direct evidence that R. F. was at the crime scene, the juvenile court could infer from the location of the broken down Saab that the vehicles had just been taken from A-1 by the four motorists. The evidence was sufficient to prove that R. F. was at least a party to the thefts.[13]

(c) R. F. similarly argues that the evidence was insufficient to support the offense of criminal trespass because there is no proof that he was present when the vehicles were taken. This argument fails for the same reasons given in Division 2 (b).

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 9, 2006.

*Evan J. Black*, for appellant.
*Jewel C. Scott, District Attorney, R. Christopher Montgomery, Jr., Assistant District Attorney*, for appellee.

---

[12] OCGA § 16-8-2.

[13] See, e.g., *In the Interest of S. D. T. E.*, 268 Ga. App. 685 (1) (603 SE2d 316) (2004); *In the Interest of R. H.*, 266 Ga. App. 751, 752 (598 SE2d 369) (2004); *In the Interest of E. G. W.*, supra.