A07A0199. IN THE INTEREST OF D. B., a child.
(644 SE2d 305)

MIKELL, Judge.

The juvenile court adjudicated 15-year-old D. B. delinquent for acts, which, if committed by an adult, would have constituted simple assault, OCGA § 16-5-20, and misdemeanor obstruction of a law enforcement officer, OCGA § 16-10-24 (a). Based on a separate petition, D. B. also was adjudicated delinquent for being an unruly child, OCGA § 15-11-2 (12). On appeal, D. B. challenges the sufficiency of the evidence to support each adjudication. We affirm as to the simple assault and misdemeanor obstruction but reverse the adjudication for being an unruly child.

---

When considering the sufficiency of the evidence to support a juvenile court's adjudication of delinquency, this court applies the standard set forth in *Jackson v. Virginia*. Thus, we construe the evidence in favor of the juvenile court's findings and determine whether a rational trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged. We do not resolve conflicts in the evidence or determine the credibility of the witnesses. Those issues are for the juvenile court to decide.[1]

Viewed in the light most favorable to support the juvenile court's adjudication, the evidence shows that on May 6, 2005, Cherokee County School Police Officer John Edgar encountered D. B. walking on the service road between Cherokee High School and Canton Elementary School. D. B. had left the high school without permission, and Edgar was helping a female officer, Baggett, to retrieve him. Edgar testified that he and Baggett brought D. B. to the office of Mike Baker, the high school's administrator and assistant principal in charge of athletics and boys' discipline. Baker explained that due to discipline problems, D. B. had been placed in an alternative school setting on the high school campus, which required him to report directly to the classroom and not walk around in the hall. However, D. B. did not comply with the rules and had to be placed into an isolated alternative school setting within the special education department. Thus, when Baker saw D. B. walking into school late that morning, Baker asked for an explanation. D. B. began mouthing off to Baker and then abruptly left the campus.

According to Edgar, D. B. was argumentative when the officers brought him back to Baker's office. Edgar told him to sit down. Edgar then testified that D. B. "pulled off his sweatshirt and emptied his pockets and squared off with [Baker] and . . . challenged him to a fight." When asked to describe D. B.'s body language, Edgar testified: "He squared up his shoulders and . . . balled up his fists . . . in an intimidating manner [like] he was going to strike him." In response, Edgar told D. B. to sit down. When D. B. did not cooperate, Edgar tried to handcuff him. Still, D. B. did not cooperate. Edgar was only able to secure one wrist; Baggett tried to assist him, and D. B. scuffled with her before Edgar could finally secure the second handcuff. Edgar testified on cross-examination that when D. B. behaved threateningly toward Baker, they were approximately four to six feet away from each other.

---

[1] (Footnotes omitted.) *In the Interest of R. J. S.*, 277 Ga. App. 74 (625 SE2d 485) (2005).

When asked whether he felt threatened, Baker testified: "I know when I walked in my office he had taken off his watch and his jacket and stood up and said, 'Now what are you going to do?' " Although D. B. did not come toward Baker, he perceived the statement as a threat, because D. B. appeared as though he "wanted to do something."

1. A person commits the offense of simple assault when he or she "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."[2] According to *Johnson v. State*,[3] this offense "is complete if there is a demonstration of violence, coupled with an apparent present ability to inflict injury so as to cause the person against whom it is directed reasonably to fear that he will receive an immediate violent injury unless he retreats to secure his safety."[4] Further, assault is an attempted battery, so the state must show that the defendant made a "substantial step" toward committing the battery.[5] D. B. contends that his adjudication of delinquency for simple assault cannot stand because he did not move toward Baker and was not close enough to Baker to hurt him. D. B. argues, therefore, that there was no evidence either that he had a present ability to inflict injury or that he made a substantial step toward committing a battery. We do not agree.

In *Johnson*, upon which D. B. relies, the defendant was picketing outside the industrial plant where he worked. As the personnel manager drove his automobile slowly through the picketers, the defendant raised his hand and shook his finger at the manager and said, "We are going to get you."[6] The defendant was approximately five feet away from the vehicle, said nothing else, and the vehicle drove on to the plant. The state offered no evidence that the manager felt that he was in danger at the time.[7] This Court reversed the defendant's conviction for simple assault, finding "a complete absence of evidence to establish that [the defendant] had the present ability to inflict a violent injury," that the manager feared any immediate injury, or that the defendant's actions or words would cause a reasonable person to fear immediate injury.[8]

By contrast in the case at bar, the juvenile court could have found that the actions D. B. took in Baker's office constituted a "substantial step" toward battering Baker. D. B. took off his outer clothing and his

---

[2] OCGA § 16-5-20 (a) (2).

[3] 158 Ga. App. 432 (280 SE2d 856) (1981).

[4] (Emphasis omitted.) Id. at 433.

[5] *Lewis v. State*, 253 Ga. App. 578, 580 (560 SE2d 73) (2002).

[6] *Johnson*, supra at 432-433.

[7] Id.

[8] Id. at 433.

watch, balled his fists, and squared his shoulders. He asked Baker, "Now what are you going to do?" Baker testified that he felt threatened. Moreover, contrary to D. B.'s assertion, there was evidence of a present ability to inflict injury upon Baker. Although the distance between them was greater than an arm's length, they were standing in a confined office. Baker did not have the protection of a vehicle, as was the case in *Johnson*. Accordingly, we find the evidence sufficient for the juvenile court to have found beyond a reasonable doubt that D. B. committed acts amounting to simple assault.

2. "[A] person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor."[9] D. B. argues that his adjudication of delinquency for this offense cannot be sustained because he did not hinder the officers in the performance of their duties and because the officers were acting outside the scope of their official duties when they tried to handcuff him. The evidence, however, proves otherwise. Edgar witnessed D. B. behaving in a threatening manner toward Baker, who testified that he asked the officers to arrest him. D. B. refused to permit himself to be handcuffed by a single officer, requiring the assistance of a second officer. The evidence supports D. B.'s adjudication for misdemeanor obstruction of a police officer in the lawful discharge of his official duties.[10]

3. Finally, D. B. challenges his adjudication of delinquency for being an unruly child, OCGA § 15-11-2 (12). The petition charged D. B. with curfew violation, OCGA § 15-11-2 (12) (E). Pursuant to that Code section, an "unruly child" commits the offense of curfew violation when he "[w]anders or loiters about the streets of any city, or in or about any highway or any public place, between the hours of 12:00 Midnight and 5:00 A.M." " '[W]ander' means . . . in current vernacular — hanging out or roaming the streets."[11]

In support of the petition, D. B.'s mother, P. N., testified that she did not see her son at all on March 25, 2005, although he resided with her; that she did not see him on the following day before he left for school; that because D. B. is on probation, he is required to be home by 9:00 p.m.; that he did not have her permission to be away from home; that D. B. did not come home until approximately 3:20 a.m. on March 26; and that she called law enforcement to report D. B.'s

---

[9] OCGA § 16-10-24 (a).

[10] See *Williams v. State*, 261 Ga. App. 176, 178 (1) (582 SE2d 141) (2003). Compare *In re G. M. M.*, 179 Ga. App. 800, 802 (1) (348 SE2d 126) (1986) (mere verbal exchange with officer, unaccompanied by verbal or physical threats, is not a violation of OCGA § 16-10-24).

[11] (Footnote omitted.) *In the Interest of R. F.*, 279 Ga. App. 708, 711 (2) (a) (632 SE2d 452) (2006). See also *In the Interest of T. H.*, 258 Ga. App. 416, 420 (2) (574 SE2d 461) (2002).

curfew violation. When D. B. finally arrived at home, he told his mother that he had gone to a party.

At the close of the evidence, D. B. moved to dismiss the petition of unruly child, contending that the state failed to prove that he was wandering or loitering about the streets.[12] The juvenile court denied the motion, concluding that the evidence supported a finding beyond a reasonable doubt that D. B. had violated OCGA § 15-11-2 (12) (D), which defines an "unruly child" as one who "[w]ithout just cause and without the consent of his or her parent or legal custodian deserts his or her home or place of abode."

On appeal, D. B. argues that his adjudication for violating OCGA § 15-11-2 (12) (D) must be overturned because the evidence did not show that he "deserted" his place of abode. Applying Georgia's rules of statutory construction, we agree. "Statutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation."[13] "In all interpretations of statutes, the ordinary signification shall be applied to all words."[14] "In the absence of words of limitation, words in a statute should be given their ordinary and everyday meaning."[15] "Desert," in its most common verb form, is defined as "to withdraw from or leave usu[ally] without intent to return."[16] Accordingly, in order for a child to "desert" his home within the meaning of OCGA § 15-11-2 (12) (D), he must leave his home without an intent to return to it. In the case at bar, the evidence showed that D. B. left home for nearly two days but then returned home. Moreover, the evidence shows that he returned of his own volition, because his mother did not call law enforcement until after he came home. It follows that the state failed to prove an essential element of this offense; namely, that D. B. did not intend to return home. D. B.'s adjudication for being an unruly child must be reversed, and the case is remanded to the juvenile court for reconsideration of the disposition based upon the adjudications of delinquency for simple assault and misdemeanor obstruction of a law enforcement officer.

*Judgment affirmed in part and reversed in part, and case remanded with instruction. Johnson, P. J., and Phipps, J., concur.*

---

[12] D. B. also argued that a fatal variance existed between the allegation and the proof as to this petition. He has not raised this argument on appeal.

[13] (Citation and punctuation omitted.) *In Interest of C. R. D.*, 197 Ga. App. 571 (1) (398 SE2d 845) (1990).

[14] OCGA § 1-3-1 (b). See *In the Interest of T. H.*, supra at 419 (2).

[15] (Citation omitted.) *In the Interest of T. H.*, supra.

[16] Webster's Ninth New Collegiate Dictionary (1991), p. 343.

DECIDED MARCH 22, 2007.

*Eric A. Ballinger*, for appellant.
*Garry T. Moss*, District Attorney, *Susan K. Treadaway*, Assistant District Attorney, for appellee.