A07A1926. IN THE INTEREST OF S. K., a child.

(658 SE2d 220)

MIKELL, Judge.

The Juvenile Court of Mitchell County adjudicated 17-year-old S. K. delinquent for acts, which, if committed by an adult, would have constituted burglary, armed robbery, and aggravated battery. S. K. contends that the evidence adduced below was insufficient to sustain these findings because he was adjudicated based solely on the uncorroborated testimony of an accomplice. In the alternative, he contends that the trial court erred in denying his motion to dismiss the petition and enter an order of acquittal on the burglary charge because he had permission to enter the dwelling. We disagree and affirm.

> When considering the sufficiency of the evidence to support a juvenile court's adjudication of delinquency, this court applies the standard set forth in *Jackson v. Virginia*.[1] Thus, we construe the evidence in favor of the juvenile court's findings and determine whether a rational trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged. We do not resolve conflicts in the evidence or determine the credibility of the witnesses. Those issues are for the juvenile court to decide.[2]

Viewed in the light most favorable to support the juvenile court's adjudication, the evidence shows that on November 30, 2006, 65-year-old John Sheffield returned to his residence after receiving a call from his niece that someone had broken into the home and his bedroom. Sheffield explained that he had locked the padlock on his bedroom door when he left his residence, but that the lock had been "busted" and the door had been kicked in. Sheffield was walking into his bathroom when a masked man appeared and said "Give me your damn money." Sheffield did not remember anything after that. He suffered from a fracture in a vertebrae of his lumbar spine, caused by direct blunt trauma; a cut on his tongue; and a small laceration on the bridge of his nose. The man took his wallet, containing $140. Sheffield suspected that the man who hit him was his nephew and S. K.'s co-defendant, Martin Jones, and signed a statement, reading as follows: "I, John Sheffield, know that [S. K.], the Defendant in this case, was not the person who hit me, because the person who hit me was taller than [S. K.]." Sheffield testified that Jones had lived with him at one time; that Jones was not living with him at the time of the

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Footnote omitted.) *In the Interest of D. B.*, 284 Ga. App. 445, 446 (644 SE2d 305) (2007).

incident; and that he did not have keys to the residence, but had permission to be there.[3]

Co-defendant Jones testified that he was charged along with S. K. for burglary, robbery, and aggravated assault of Sheffield and that he reached a plea agreement with the state. As to the events of November 30, Jones testified that he lived with Sheffield; that he invited S. K. to Sheffield's home; that he and S. K. went into Sheffield's bedroom; that he pushed Sheffield onto the floor and then S. K. hit him in the face three or four times and took his wallet; and that he and S. K. split the money.

Richard Butler explained that he was pulling up to Sheffield's residence in his vehicle when he saw Jones and S. K. come out of the house. On cross-examination, Butler further explained that Jones and S. K. stumbled out the front door and then walked off, and that he did not see them carrying anything. Shameika Williams testified that she was in the home at the time of the attack, but did not see Jones or S. K. and did not hear anything because she was "in the room with the door closed and [her] baby was playing, making noise." Tony Brown testified that he was in the home at the time of the attack but did not see either Jones or S. K. He further testified that if someone had tried to "bust a lock" he probably would have heard it, but that he was in the restroom at the time of the alleged events and could not have heard a lock being "busted."

Officer Ralph Hall of the Camilla Police Department testified that he found Sheffield lying facing down in the doorway between his bedroom and bathroom; that Sheffield had been assaulted; that Sheffield told him that he had been hit and that his wallet was taken; that the bedroom door appeared to have been kicked in and the lock "forcibly damaged"; and that Butler told him that he saw Jones and S. K. running from the residence.

Dana Meade, an investigator with the Camilla Police Department, testified that after S. K. was arrested and read his *Miranda* rights, he denied any involvement in the incident, explaining that he was in the living room when Jones attacked Sheffield, but walked into the bedroom when he heard "some commotion." S. K. then dragged Jones off of Sheffield, and the two men left the house. Jones also gave a statement to the police, explaining that he wanted to teach Sheffield a lesson and that after he shoved Sheffield to the ground, S. K. hit him repeatedly, took his wallet, and then took off running. The two met up later and S. K. gave Jones $50.

---

[3] The record is unclear, but it appears that Sheffield lived in a boarding house or a relative's home.

S. K. testified at trial that Jones invited him to his grandmother's home; that he was sitting in a chair in the "front room" when he heard a loud thud come from Sheffield's bedroom; that he ran into the bedroom and found Jones standing over Sheffield, hitting him repeatedly; and that he pulled Jones off of Sheffield and out of the house, and then walked off with him. S. K. denied hitting Sheffield or taking his wallet. He also testified that "the front room and [Sheffield's] room, . . . they were, like, right there, right there. They didn't — the door right there by the front room, so you really could look straight in they rooms."

1. S. K. contends that the evidence was insufficient to sustain his conviction because it was based solely on the uncorroborated testimony of Jones, his co-defendant, in violation of OCGA § 24-4-8.

"Under Georgia law, a defendant may not be convicted solely upon the uncorroborated testimony of an accomplice, OCGA § 24-4-8, and this Court has held that the requirement for such independent corroboration is applicable to juvenile proceedings."[4]

Although corroboration of the testimony by a single accomplice is necessary, that corroborating evidence itself need not be sufficient to warrant conviction, but need only tend to connect and identify defendant with the crime. The corroborating evidence may consist entirely of circumstantial evidence and may include defendant's conduct before and after the crime was committed. Whether the corroborating evidence is sufficient is a matter for the [factfinder], and even slight evidence of corroboration connecting an accused to a crime is legally sufficient.[5]

Here, both Hall and Meade testified that Butler stated that he had seen Jones and S. K. running from the crime scene. Butler testified at trial that he has known both Jones and S. K. since they were young and that he saw them running or rushing, perhaps stumbling, out of the residence, but that they stopped and began walking away from the scene when they saw him. This evidence of S. K.'s rapid flight from the scene, which indicates awareness of guilt, was sufficient corroboration of Jones's testimony.[6]

---

[4] (Citation omitted.) *In the Interest of M. B.*, 267 Ga. App. 721, 722 (601 SE2d 370) (2004). See also *Brookshire v. State*, 230 Ga. App. 418, 419 (496 SE2d 757) (1998).

[5] (Citations and punctuation omitted.) *Ellison v. State*, 265 Ga. App. 446, 447 (1) (594 SE2d 675) (2004).

[6] Id. at 448, citing *Oliver v. State*, 146 Ga. App. 551, 552 (2) (246 SE2d 734) (1978) (defendant's rapid flight from crime scene corroborated accomplice's testimony). See also *Johnson v. State*, 275 Ga. App. 161, 162 (620 SE2d 433) (2005).

Moreover, S. K. himself gave testimony that corroborated most of Jones's testimony, except for the ultimate issue of his participation in the crime. And, during his testimony, S. K. admitted having committed two prior similar acts, specifically, a burglary and an attack of a man who, like the victim here, was 65 years old. Evidence that an accused committed a similar crime or crimes is sufficient corroboration.[7]

2. In his second enumeration, S. K. contends that the trial court should have granted his motion for a directed verdict on the burglary charge because (1) he had permission to enter the residence, and (2) he did not enter the residence with intent to commit a felony. We disagree.

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another."[8] " 'Without authority' is defined as without legal right or privilege or without permission of a person legally entitled to withhold the right."[9] In this case, Sheffield testified that he had two locks on his bedroom door, including one padlock; that he locked his bedroom door when he left the residence; and that when he returned, the padlock had been "busted off" of the door. Even though there was evidence that S. K. initially entered the house with permission, there is no evidence that he had permission to enter Sheffield's bedroom. Moreover, the juvenile court was not required to believe S. K.'s testimony that the door to Sheffield's bedroom was open when he and Jones arrived at the residence.

S. K. further contends that the state failed to prove that he intended to commit a felony prior to entering Sheffield's bedroom. "The intent necessary for commission of burglary, . . . need not be formed at the precise moment of entry, but can be formed thereafter while the perpetrator is remaining on the premises."[10] "Whether the defendant entertained an intent to commit a felony . . . after entering is a matter for the [factfinder] to say, under the facts and circumstances proved. As a general rule the state must, of necessity, rely on circumstantial evidence in proving intent."[11] Here, S. K. contends that when Jones was asked whether he and S. K. hit Sheffield with the intent to take his money, Jones answered, "Not really." He argues

---

[7] See *Kenney v. State*, 196 Ga. App. 776, 777 (3) (397 SE2d 131) (1990).

[8] OCGA § 16-7-1 (a).

[9] (Citation and punctuation omitted.) *Abney v. State*, 240 Ga. App. 280, 281 (1) (523 SE2d 362) (1999).

[10] (Punctuation and footnote omitted.) *Williams v. State*, 268 Ga. App. 384, 387 (1) (b) (601 SE2d 833) (2004).

[11] (Citations and punctuation omitted.) *Murray v. State*, 187 Ga. App. 747 (371 SE2d 272) (1988).

that no other evidence was provided as to intent. On the contrary, Meade testified that Jones stated that he and S. K. went to Sheffield's residence because Jones wanted to "scare [him] up, teach him a lesson." This testimony, coupled with the evidence of an unlawful entry into Sheffield's bedroom and S. K.'s flight from the scene, supported the juvenile court's conclusion that S. K. intended to commit a felony in the house.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 20, 2008.

*Draffin & Tucker, Jeffrey L. Williamson,* for appellant.
*Joseph K. Mulholland, District Attorney, Michael T. Garrett, Assistant District Attorney,* for appellee.

