670 S.E.2d 881 (2008)
In the Interest of M.B., a child.
No. A08A1688.
Court of Appeals of Georgia.
December 2, 2008.
*882 Mushiya Kabemba-Warren, for appellant.
Donald N. Wilson, District Attorney, Craig E. Miller, Assistant District Attorney, for appellee.
PHIPPS, Judge.
M.B. appeals orders of the Juvenile Court of Haralson County adjudicating him delinquent and committing him to the custody of the Department of Juvenile Justice for two years. The court found that at the adjudicatory hearing the state proved beyond a reasonable doubt that M.B. had committed the delinquent act of aggravated child molestation against his nephew, A.T., by doing an immoral and indecent act involving an act of sodomy. In this appeal, M.B. challenges the sufficiency of the evidence to support the court's adjudication.
When considering the sufficiency of the evidence to support a juvenile court's adjudication of delinquency, this court applies the standard set forth in Jackson v. Virginia. Thus, we construe the evidence in favor of the juvenile court's findings and determine whether a rational trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged. We do not resolve conflicts in the evidence or determine the credibility of the witnesses. Those issues are for the juvenile court to decide.[1]
Applying these principles, we find the evidence sufficient and affirm.
State's evidence showed that the aggravated child molestation occurred during the summer of 2007 when the victim, A.T., and his older teenage sister, C.R., were visiting their maternal grandmother and her two children, defendant M.B. and M.B.'s teenage sister C.D. At the time of the adjudicatory hearing in February 2008, A.T. was seven years old and M.B. was thirteen years old.
A.T.'s mother testified that although he was generally a very happy and affectionate child, he became extremely depressed and even expressed suicidal thoughts after returning home from visiting his grandmother in the summer of 2007. When A.T.'s mother picked him and his sister up at their grandmother's house at the end of their stay, he revealed to her that M.B. had done some "nasty things," including watching "nasty shows" and putting "his private in my boo-ta-ta." According to A.T.'s mother, "boo-ta-ta" was the word A.T. used to describe his buttocks.
A.T.'s mother immediately took him to the emergency room at the Floyd Medical Center to be examined. The on-duty physician there testified that his examination showed that A.T.'s anus appeared slightly red, a condition which could have been caused by trauma. A.T. described to the physician incidents in which someone had forced his penis into the child's mouth until the person "peed," in which someone had forced his penis into the child's bottom until the person "peed" and A.T. yelled that it hurt, and in which A.T. had been forced to put his penis into someone's mouth until he "peed."
A.T. was later interviewed by a psychologist at a child advocacy center known as Harbor House. The psychologist described *883 A.T. as a normal six-year-old boy who told her that M.B. had put his penis into A.T.'s buttocks causing it to hurt; that he, A.T., would then use toilet paper or baby wipes to remove the "pee," but could not remove the odor; and that M.B. had also made A.T. "suck [M.B.'s] penis." A.T. told the psychologist that most of these things happened in M.B.'s bedroom. A.T. also described to the psychologist "nasty movies" that M.B. had in his room. According to the psychologist, A.T.'s disclosures were "consistent with other children who have been abused."
A.T.'s sister testified that when she and A.T. stayed with their grandmother during the summer of 2007, A.T. would normally sleep with M.B. A.T. testified that when he stayed with his grandmother during the summer of 2007, he generally slept in the bed in M.B.'s room and M.B. generally slept in the living room by the television. A.T.'s sister further testified that while they were at their grandmother's house, A.T. had become upset and told her that he was scared of M.B. and did not want to be around him; and that she had told their grandmother about it, but that her grandmother did not believe her and had told her that she and A.T. needed to quit making things up. A.T.'s mother testified that A.T. also disclosed to her that M.B. had ejaculated in A.T.'s mouth, that he had made A.T. submit to anal sodomy while A.T. was standing beside the bed, that M.B. had shown him pornographic movies, and that most of these incidents had occurred at night. According to her, A.T. would not have had the opportunity to learn about such matters at her house.
The grandmother, her daughter C.D., and M.B. appeared as defense witnesses. According to both the grandmother and C.D., M.B. did not sleep with A.T., and A.T.'s sleeping arrangements and supervision were such that M.B. would not have had the opportunity to molest him. The grandmother and C.D. also testified that every night A.T. awoke with nightmares that snakes or various insects were crawling on him. According to the grandmother, A.T. was on medication that caused him to have tantrums. And she described several instances in which A.T.'s mother had made false or unfounded allegations of sexual misconduct by others directed at her. A.T.'s grandmother denied that M.B. had any pornographic movies or that A.T.'s sister had complained to her about M.B.'s conduct toward A.T.
After observing the Harbor House psychologist's interview of A.T., the Haralson County Sheriff's Office investigator obtained warrants to arrest M.B. and to search his house. No pornographic movies were found during the search of the house. Toilet paper and wet wipes found in a bathroom trash can were tested for the presence of seminal fluid but none was found. The investigator also testified that A.T.'s mother provided him with the clothes A.T. was wearing when, according to A.T., M.B. last molested him. The investigator inspected the clothes with an infrared light in an attempt to find traces of semen, but found none.
Although the state's failure to collect any corroborative biological evidence or find any pornographic movies in M.B.'s house certainly created weaknesses in its case, these omissions did not under the circumstances present here demand a finding that the act or acts of aggravated child molestation charged by the state did not occur. It is not our function to undertake a qualitative review of the evidence to determine whether we, as factfinders, would find it adequate to persuade us beyond a reasonable doubt that the juvenile engaged in the conduct charged. Our task is to determine whether there is some competent evidence sufficient to establish that he did. Competent evidence that M.B. performed an act of sodomy against A.T. is found in the testimony of A.T., his sister, and his mother, as supported by the psychologist in combination with the finding of the emergency room physician. Deciding the weight to be given that evidence, determining the credibility of the witnesses, and resolving conflicts in their testimony were the exclusive province of the juvenile court as the trier of fact.
Judgment affirmed.
BARNES, C.J., and JOHNSON, P.J., concur.
NOTES
[1] In the Interest of S.K., 289 Ga.App. 672, 658 S.E.2d 220 (2008) (footnotes omitted); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).